## C. B. DORCHESTER, RECEIVER, ET AL. V. MERCHANTS NATIONAL BANK OF HOUSTON ET AL.

### No. 2312. Decided January 28, 1914.

**1.—Banking—Check—Diligence in Presentation.**

In order to hold the drawer of a check upon a bank in which he has deposits to meet its payment liable for its amount upon dishonor, it must be presented to the bank with reasonable diligence; and this requires its presentation, when all parties reside in the same place, within business hours of the day following its delivery. The same requirement as to diligence applies to the assignee to whom the payee has transferred it for collection, with reference to the latter's claim against such assignee.   (P. 209.)

**2.—Same—Clearing House.**

The fact that the banks of a city have united to form a clearing house to which daily the checks drawn upon one member and coming into the hands of another are delivered for the purpose of arranging their respective debits and credits, does not affect the liability of a bank belonging to such association to a person not a member thereof for failing to make due presentation thereof to another bank, also a member, of a check transferred to it for collection by such person. Though the check was handled by the clearing house in accordance with its rules and custom of business, these do not affect the rights of others than members, though known to them.   (Pp. 209, 210.)

**3.—Same—Case Stated.**

Plaintiff, in settlement of an indebtedness due upon account, received from a company in Houston, where both did business, a check upon a bank in that city where the drawer had funds on deposit to meet it, and sent it on the same day to another bank where his own deposit was kept. Both these, with the other banks of the city, had united to form a clearing house to which the checks in the hands of each against any of the others were daily sent for the adjustment of their respective debits and credits therefrom. The check was received from plaintiff by the bank too late to go into the clearing house that day at the clearing point of 2:45 p. m. It was therefore sent in on the next day at that hour, and by the clearing house sent to the bank on which it was drawn, to have signature verified, after that bank closed for the day. If presented for payment in business hours of that day it would have been paid. The bank on which it was drawn was insolvent and did not reopen for business on the next morning. The bank holding it failed to get the money, or credit for the amount in the clearing house, and neither it nor the payee had recourse against the drawer. Held, though the check was handled by the bank with which plaintiff, the payee, placed it in accordance with the rules and customs of the clearing house, and these were known to plaintiff, he was not bound by them, and the bank was liable to him for the amount which was lost by its failure to present it for payment within the time required by law.   (Pp. 204-210.)

Error to the Court of Civil Appeals, First District, in an appeal from Harris County.

Dorchester, as receiver, sued the Merchants National Bank of Houston, along with the Texas Lamp & Oil Company, for the amount of a check drawn in his favor against T. W. House, and dishonored by reason of his failure. Plaintiff's recovery against the defendant bank was reversed on its appeal, and he then obtained writ of error.

*Andrews, Ball & Streetman,* for plaintiff in error.—Appellee Dorchester, Receiver, having received the check in question on the morning of October 16, 1907, and having deposited said check in the Merchants

National Bank on the same day, and before the close of business hours on that day, the Merchants National Bank owed to him the duty, under the law, of presenting said check for payment to the T. W. House bank before the close of business hours on the day following, towit, October 17, 1907. 1 Morse on Banks & Banking (4th ed.), sec. 238, p. 469; 1 Daniel on Negotiable Instruments (5th ed.), sec. 332, p. 340; 7 Cyc., pp. 977-6; 5 Cyc., p. 531.

The appellant, Merchants National Bank, did not perform its duty to appellee Dorchester, Receiver, in that it failed to present the check in question for payment before the close of business hours on the day following that on which the check was deposited with it. Joyce, Defenses to Commercial Paper, sec. 577; Peabody v. Bank, 108 N. W., 272; Waring v. Betts, 44 Am. St., 890; 7 Cyc., p. 995.

Appellant, Merchants National Bank, was required, under the law, to present the check in question for payment before the close of business hours on the day following that on which it received the check, and its custom to pass the check through the clearing house at the time, and in the manner, and with the results reflected by the record in this case, was unreasonable, and in contravention of the common law, and neither such custom, nor any custom, can be relied upon by it as a defense to the omission by it of a duty enjoined upon it by law. Lockhart v. Dewees, 1 Texas, 535; McKinney v. Fort, 10 Texas, 220; Lawrence v. State, 20 Texas App., 536; Moody & Co. v. First National Bank, 19 Texas Civ. App., 278; Barnard v. Kellogg, 10 Wall., 383; Frith v. Barker, 2 Johns. (N. Y.), 327; First National Bank v. Miller, 55 N. W., 1064; Noble v. Doughten, 3 L. R. A. (N. S.), 1173; Bank v. Hendrix, 1 L. R. A. (N. S.), 246; National Bank of Commerce v. American Exchange Bank, 52 S. W., 265; Van Camp Packing Co. v. Hartman, 25 N. E., 901; Dixon v. Gray, 83 Am. Dec., 659; Farnsworth v. Hammer, 79 Am. Dec., 758; Randall v. Smith, 18 Am. Rep., 200; Ayrault v. The Pacific Bank, 47 N. Y., 570; Wheeler v. Newbold, 16 N. Y., 392; 27 Am. & Eng. Ency. of Law (1st ed.), pp. 782, 783, 784, 786, 789, 795.

The appellant, Merchants National Bank, having for its own convenience selected the clearing house as a means whereby its checks on other banks were paid, and its checks and the checks of the other banks having been offset against each other, and payment thereof thereby effected, and the clearing house having issued checks in favor of the creditor banks upon the debtor banks, to cover the differences between the total amounts of the checks, and it having been the custom in the City of Houston, for nineteen years, for the checks to be paid in such manner, and there being no rule, provision or regulation in the clearing house under which such a settlement between the banks could be set aside or annulled, the payment of the check in question by offset in the clearing house on October 17, 1907, was, as to this appellee, final, and the bank had no power, after the close of business hours on said day, to set aside such settlement, to the prejudice of this appellee, and is liable to this appellee for the loss which has re-

sulted. 2 Bolles' Modern Law of Banking, 631; O'Bryan v. Grant, 40 N. E., 871; Manufacturers National Bank v. Thompson, 37 Am. Rep., 376; Merchants National Bank v. National Bank of the Commonwealth, 2 N. E., 89.; Blaffer v. La. National Bank, 35 La. Ann., 255; Overman v. Bank, 30 N. J. L., 61; Crocker-Woolworth National Bank v. Nevada National Bank, 73 Pac., 456; National Union Bank v. Earle, 93 Fed., 330; City of Philadelphia v. Keithler, 34 Atl., 298; Kansas State Bank v. First State Bank, 64 Pac., 637; Mt. Morris Bank v. 23d Ward Bank, 64 N. E., 810; Philler v. Jewett, 31 Atl., 204; Philler v. Patterson, 32 Atl., 36; 5 Cyc., p. 614.

In so far as concerns the question of the proper and due presentment of said check through the clearing house, we urge that if it be held by this court that such presentment was a due and proper presentment, the Texas Lamp & Oil Company, and not this appellee, is responsible for the loss resulting from the failure of the bank on which such check was drawn.

*Lane, Wolters & Story* and *W. A. Vinson,* for defendant in error, Merchants National Bank of Houston.—The Merchants National Bank having with due diligence presented said check for payment to the House bank, through the clearing house, and the evidence having shown that Dorchester knew and contemplated at the time he deposited said check that it would be presented to the House bank for payment through the clearing house, according to the usual custom of the business, the loss which ensued on account of the failure of the House bank must fall on the principal (Dorchester) and not on the agent (Merchants National Bank). 31 Cyc., 1455, and authorities cited in notes.

The presentation of a check by a collecting bank the day after it is deposited for collection is timely and the exercise of due diligence. O'Brien v. Smith, 66 U. S., 64; Zane on Banks & Banking, 433, 5 Am. & Eng. Ency. of Law, p. 1042; Loux v. Fox, 33 Atl., 190.

Presentment of a check by a collecting bank to the bank on which it is drawn, through the clearing house, is due and legal presentment thereof for payment, and a full discharge of the duty imposed upon the collecting bank. 1 Morse on Banks & Banking, p. 598; 6 Am. & Eng. Ency. of Law, 117; Zane on Banks & Banking, p. 299; Reynolds v. Chettle, 2 Campb., 596.

*Ira P. Jones,* for defendant in error, Texas Lamp & Oil. Co.—The check having been drawn on the 15th day of October and delivered to the payee, Dorchester, or his agent, the Waters-Pierce Oil Company, no later than 8 o'clock October 16, 1907, and thereafter said check having been deposited by said payee in the appellant bank on the day of the receipt thereof, and said check not having been presented by the appellant to the T. W. House bank and not having been refused or returned to the drawer until after the closing of the business hours on October 17, and the bank of T. W. House having failed after close of business hours and before the presentation of said check, there was no such pres-

entation as is required by law and the loss must fall on him whose negligence caused it. It was not competent for the usage or custom of the members of the Houston Clearing House Association to change established law nor the rules of the law merchant so as to affect this appellee, a non-member of such association. Curtis & Co. Mfg. Co. v. Douglass, 79 Texas, 167; Pink Front Bankrupt Store v. Mistrot, 90 S. W., 756; Kirkpatrick v. Puryear, 24 S. W., 1130; Smith v. Jane, 20 Wend., 192; Downey v. Hicks, .55 U. S., 408; O'Brien v. Smith, 66 U. S., 99; 5 Am. & Eng. Ency. of Law, 1042, 1043, 1045; 29 Am. & Eng. Ency. of Law, 383; First Natl. Bank v. Miller, 55 N. W., 1064; 2 Bolles Modern Law of Banking, 631; Carrol v. Sweet, 13 L. R. A., 44.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

This suit was instituted by Dorchester, receiver, against the Texas Lamp & Oil Company to recover $1563.33, on a verified account. The defendant admitted the correctness of the claim but alleged that it paid the claim by a draft for the sum due, drawn by it in favor of plaintiff on the bank of T. W. House, which was located in the City of Houston, which check was delivered to plaintiff, and that said Oil & Lamp Company had at that time in the T. W. House bank more than sufficient funds to pay the check which remained in said bank until its failure, and that plaintiff failed to present the check for payment in due time. The receiver then amended the petition and made the Merchants National Bank of Houston a party defendant, alleging, in substance, that the plaintiff delivered the check to that bank for collection which negligently failed to present the check in due time. The latter bank answered as follows:

"This defendant avers that if it ever had or handled the check described in plaintiff's petition, it took the same in due course of business, and that in handling the same it handled it in the ordinary, customary and usual manner in which such matters are handled by banks doing business in the City of Houston, State of Texas, and elsewhere; that if it ever handled said check it used due diligence and all care necessary and proper, and such as is customary in an effort to collect the same; that it was not negligent in any particular or in any manner or in any way in its efforts to collect said draft; that if it ever handled said draft it presented the same promptly for payment in the usual and customary manner in which such items are handled by the banks of Houston, and in such prompt, usual and customary manner as plaintiff knew the said check would be handled by said bank when the same was deposited with it for collection; that if it ever handled said check, the same, when presented promptly and properly and through the proper channels, was dishonored, not paid, and returned to this defendant, and immediately by it reported dishonored and returned to the plaintiff; and this defendant denies that it has been guilty of any negligence, neglect or carelessness whatever in connection with the handling of said check or its presentation for payment, and denies that it is liable to

the plaintiff in any sum whatever in this case, and of this it puts itself upon the country."

The trial court gave judgment in favor of the Lamp & Oil Company, and in favor of plaintiff against the bank. The Court of Civil Appeals reversed that judgment against the receiver, from which judgment this writ of error was granted. The judge of the District Court made this finding of facts: ·

"1. That the defendant, Texas Lamp & Oil Company, was indebted as alleged by petitioner, upon open account, in the sum of $1563.33, which indebtedness is not denied.

"2. That on the 15th day of October, 1907, the Texas Lamp & Oil Company drew its check upon the bank of T. W. House and sent the said check by mail to its creditor, Dorchester, as receiver of the Waters-Pierce Oil Company, which check was received by said Dorchester, or his agent, in due course of mail, on the morning of October 16, 1907, at about the hour of 8 o'clock. I find that the Texas Lamp & Oil Company, or its manager or owner, who drew the check, did business with T. W. House, and that he had received canceled checks that had gone through the clearing house which had marked on them 'paid by clearing house' or 'paid through the clearing house,' and that the present Texas Lamp & Oil Company had been doing business here about six or seven years. I do not find that said manager or owner had any other knowledge of the methods of doing business than were revealed by those checks.

"3. The said agent of the receiver in charge of the business in Houston took the said check, in connection with something like 119 other checks, aggregating $10,045.36, and sent them by messenger, in the ordinary course of business, to the Merchants National Bank, which is interplead in this action.

"4. I find that the weight of the testimony is to the effect that the messenger of the Waters-Pierce Oil Company (which term will be used instead of using the name of Dorchester) did not reach the bank until some time after 2:30 o'clock on the 16th, or about 2:45 or 2:55 on that day, and did not reach it in time for the checks deposited on that day to get into the clearing house, it being necessary under the rules of the clearing house for all checks to be there at the clearing point by 2:45 p. m. of each business day, that being the hour at which the clearing house met each day, except on Saturdays.

"5. The Merchants National Bank, therefore, held the checks, but duly sent them in to the clearing house at the proper hour on the 17th, at 2:45 p. m., and when the checks were received, they were all sorted out, as is customary there, and all the checks that were drawn on T. W. House were delivered to some messenger or clerk of his and sent over to the bank of T. W. House for the purpose of having the signature verified and the endorsements examined by those of his employees charged with that duty. I find the weight of the evidence to show that this check did not get to the bank of T. W. House till after 3 p. m., when it was closed for business.

"6. The Merchants National Bank was a debtor of the clearing

house on that day to the extent of something like $114,000, and T. W. House was debtor bank to the extent of something in excess of $21,000. The method of operation of the clearing house seems to be that all the checks drawn in favor of any bank were balanced against those drawn against it, and if those drawn against it are in excess of those drawn in its favor, it becomes a debtor to the clearing house to that extent and the manager of the clearing house draws checks upon the debtor banks in favor of the banks who are credit banks on that day, and thus the accounts are settled between them.

"7.   Upon that day, October 17, 1907, the balances were so struck and checks were drawn on the Merchants National Bank in favor of other banks to the extent of its indebtedness, and a check to the extent of twenty-one thousand and odd dollars was drawn against the bank of T. W. House, which when presented, was refused payment, T. W. House having at the close of business on that day acknowledged himself insolvent and made an assignment, and he was afterwards adjudged a bankrupt.

"8.   It seems, so far as I can deduce from the testimony, that the clearing house had no rules or regulations in its by-laws or book of rules providing for any such contingency as the failure of one of its members, so after the failure of Mr. House was announced, there was an assemblage called together of the officers of all other banks belonging to the clearing house, ten in number, excluding Mr. House, and it was decided to have another clearance and rebalance the books and exclude and eliminate all checks drawn in favor of or against T. W. House, which was done.

"9.   I find that in anticipation of the payment of the check by Mr. House when it should be presented through the clearing house, the Merchants National Bank marked on it in the usual way 'paid through the clearing house, October 17, 1907,' and in that form it went to the clearing house.

"10.   When that check and all others drawn on T. W. House were dishonored and refused payment, the Merchants National Bank notified the Waters-Pierce Oil Company of that fact, and that company sent the Merchants National Bank a check for $1563.33 to balance the credit it had received by reason of the deposit of the check drawn by the defendant, Texas Lamp & Oil Company, in its, the Waters-Pierce Oil Company's, favor.

"11.   I find from the testimony of the paying teller of T. W. House, a man of unquestioned veracity, that if the check drawn by the defendant, Texas Lamp & Oil Company, on T. W. House, in favor of the receiver of the Waters-Pierce Oil Company, had been presented to him within business hours on the 17th day of October, 1907, it would have been paid, because the drawers had funds to their credit sufficient to pay it and the bank had sufficient money wherewith to meet it.

"12.   Unless the facts above recited of the sending of the check to the clearing house, and the action concerning it explained above, was a presentation, within the meaning of the law, there never was any pres-

entation of the check at the counter office of T. W. House with a request for payment of the funds it called for, before 3 o'clock on the 17th of October, 1907.

"13.   When the receiver of the Waters-Pierce Oil Company sent his check to offset the credit he had received, he had no actual notice of what had been done with the other check or what course it had taken, further than he was informed that payment had been refused, but I find he or his agents knew that the course the check would take would be through the clearing house.

"14.   It seems that the clearing house is a voluntary association of all the banks in the City of Houston, organized and operated for their convenience and to expedite business by an exchange of checks at a certain hour each day, instead of each bank sending to all other banks all the checks drawn on them, and that its organization as such is composed of all the banks in the city.

"15.   I find that it is the custom of business houses to deposit their checks in the banks with which they do business and that customarily the banks make their collections through the clearing house, and that in Houston it is generally known among those dealing with banks that deposits must be in by 2:30 p. m.   The custom of all the banks in Houston that belong to the clearing house also was to make collections of checks drawn against the members of the clearing house, through the clearing house.   It is not shown that there was any agreement to that effect in the organization of the clearing house, but such was the custom and usage, and it seems that each bank which belonged to the clearing house also had a clerk, or one in some capacity, who attended to the business of delivering items of deposits to the clearing house for action, but such member had no authority, as I conclude, to pass upon the validity of checks or decide whether they were good in the sense that there was funds to meet them."

The sole question in this case is, was Dorchester bound by the action of the Merchants National Bank in presenting his draft on the House bank through the clearing house at Houston?   It is undisputed that the Merchants National Bank did not present the draft directly to the House bank, and that the draft was not presented by or through the clearing house to the House bank before the latter bank was closed on the last day which the law allowed for the presentation of it.   It is also unquestionable that if the draft had been presented by the Merchants National Bank to the House bank before it closed on the 17th of the month, it would have been paid, and that the failure to so present it caused the failure of collection, the House bank having closed and gone into bankruptcy at the closing hour of that day.

The Court of Civil Appeals assumes that Dorchester knew of the existence of the clearing house in Houston, and that the Merchants bank was a member thereof, and also knew that the Merchants bank was in the habit of presenting drafts on members committed to its care for collection to the clearing house for adjustment.   But there is no evi-

dence whatever that Dorchester authorized or had ever approved of that method of collection. The issue between the parties in this litigation is whether the failure of the Merchants bank to present the draft to the House bank within the time prescribed by law was negligence on its part which would render it liable on the failure to collect the draft although it had presented the draft in the regular way prescribed by its rules to the clearing house and adjustment was made between the banks, crediting the Merchants bank and charging to House bank.

Certain banks in Houston, possibly all, had formed themselves into a voluntary association called a clearing house, of which the defendant in error and the House bank were members. The clearing house had rules for the government of its members to the effect that all drafts drawn against any bank member of the clearing house, and held for collection by a bank member of the clearing house, might be presented to the clearing house within a given time in order that it might be adjusted in the general settlement of the claims between the bank members. At a certain hour the balance was ascertained, by which each member was charged with the drafts or claims presented against it, and allowed credit for the claims which it held against other banks of the association. If the balance should be in favor of a bank, then it would receive a check or checks for the amount of the difference in its favor against some bank or banks which were indebted to the clearing house, and thus the claim would be settled. The debtor banks were thus made liable to the clearing house for the amounts in which they were debtor upon the final settlement, and were subject to the checks drawn in favor of the creditor banks for the sum due to each of such banks.

The Merchants bank and the T. W. House bank were each debtor banks on the day on which this claim was presented. On striking the balance the Merchants bank was indebted $104,000, after receiving credit for all drafts held by it, including the draft on the House bank, and the House bank was indebted $21,000. It is evident from the rules stated and the transaction in the clearing house that the Merchants bank received credit for the sum of $1563.33, being the draft in question in this suit, that amount being charged against the House bank by the Clearing House Association, for which sum the defendant in error was required to account to the clearing house. The draft drawn in favor of Dorchester and delivered to the Merchants bank against the House bank was not presented for payment, either by the Merchants bank or by the clearing house on that day, but was submitted to some officer or employee of the bank for the purpose of verifying the signature and the genuineness of the draft.

The evidence is undisputed that if the draft had been presented to the House bank before it closed business at 3 o'clock on the 17th day of the month, as the law required it should be, it would have been paid. Not having been so presented within the time required by law, the drawer of the draft was discharged from liability to the receiver, Dorchester, and he lost by reason of the failure to present it as the law required, the amount of that draft.

Was the Merchants bank negligent in not presenting the draft to the House bank for payment?   In other words, was Dorchester bound by the action of the Merchants bank in using the clearing house method of settling this claim?

In order to simplify the issue we will assume that Dorchester did know that the Merchants bank and the House bank were members of the clearing house, and did know that the Merchants bank was in the habit of adjusting its claims against other bank members of the same clearing house by presenting such claims to that organization for adjustment.

The law prescribed as the measure of diligence in this case that the draft received by the Merchants bank on the 16th of the month should be presented to the House bank within banking hours on the 17th, the next day after Dorchester received it.   Morse on Banks and Banking, vol. 2, sec. 421.   Other citations to this point would be superfluous.

The excuse offered and sustained by the Court of Civil Appeals was that it was the custom of the banks which belonged to the clearing house, and of all banks in Houston, to present such drafts to the clearing house for adjustment, which fact was known to Dorchester.   The defendant in error submitted the draft to the clearing house in Houston on the 17th of October, in accordance with the rules of that association, which the Court of Civil Appeals held to be a sufficient discharge of its duty, citing Bank v. Triplett, 1 Pet., U. S., 30, and Morse on Banks and Banking, vol. 1, sec. 214-219.   The authorities cited are not applicable to the facts of this case.   The law applicable to the facts of the present case is stated in Morse on Banks and Banking, sec. 421, as follows:

"(b)   1.   All drafts, foreign or inland, must be presented to the drawee within a reasonable time, and in case of non-payment prompt notice must be given to the drawer and indorsers.   What is a reasonable time depends on the circumstances of each case and is sometimes a very difficult question.   The relations of the parties, the time, mode and place of receiving the check, must be considered, and whether the check is post-dated or not.   The presumption is that a check would have been paid if diligently presented.   And what is due diligence, as a general rule, is a question for the jury.

"(c)   2.   The drawer can not (except by agreement or under special circumstances as above) be held absolutely beyond the business hours of the day following his delivery of the check, if the bank is in the same place, or if the bank is in another place, the period of his liability will be until the close of business hours on the first secular day following the receipt of the check by someone in the bank's locus, the check having been mailed upon the day following its delivery by the drawer."

It being the duty of the receiving bank, defendant in error, to its depositor, Dorchester, to present the draft during banking hours of the next day, the 17th of October, it, the receiving bank, could not bind the depositor, Dorchester, by conforming to the rules of the clearing house, which were at variance with the laws.   "The rights of a non-member

depositor in a member bank are not affected by the clearing rules, nor can he take advantage of them."  1 Morse on Banks and Banking, sec. 351; Bank v. Bank, 139 Mass., 513; Overman v. Hoboken City Bank, 31 N. J. L. (2 Vroome), 563.  The opinion in the last case cited discusses the relation of a depositor to a clearing house of which it is not a member with convincing clearness.  The facts were very similar to the present case.  It was distinctly held that a non-member of a clearing house was not bound by its rules, and a member bank which adopted the methods of the clearing house did not bind its depositor.

The drawer of a bill of exchange has the legal right to have it presented for payment to the drawee within the time prescribed by law, and the payee is charged with the diligent performance of that duty. The agent of the payee has no more liberty in the collection than the principal, either must present the draft within the business hours of the second day, when, as in this case, the payee and drawee reside in the same city.  The fact that parties to the instrument are members of a clearing house association can not vary the rules of legal diligence in discharge of duties to a non-member.

The effect of the rule applied by the Court of Civil Appeals is exemplified by this case.  The failure of the Merchants bank to present the draft at the House bank according to law operated to discharge the oil company because of want of diligence, but the same acts are held to constitute diligence as to Dorchester.  This can not be a logical and legal result, unless Dorchester is to be held bound by the rules of the clearing house of which he was not a member.  He was not so bound under the law of the land.

The trial judge made an excellent statement of the facts of the case and rendered a correct judgment thereon, which the Court of Civil Appeals erroneously reversed, and rendered judgment for the Merchants bank.

It is ordered that the judgment of the Court of Civil Appeals be and it is hereby reversed and the judgment of the District Court affirmed.

*Reversed and judgment of District Court affirmed.*