**SHAW, Banking Commissioner, v. R. C. FLICK MERCANTILE CO.**

No. 9414.

Court of Civil Appeals of Texas. Galveston.
March 14, 1930.

Rehearing Denied April 10, 1930.

Spencer, Rogers & Lewis, of San Antonio, for appellant.

Crain & Hartman and H. W. Wallace, all of Cuero, for appellee.

GRAVES, J.

This concededly correct statement is taken from appellant's brief:

"Appellant, James Shaw, Banking Commissioner, sued appellee, R. C. Flick Mercantile Company, on a note for two thousand dollars dated the 2nd day of April, 1928, due on September 2, 1928, with ten per cent interest per annum from maturity and ten per cent attorneys' fees, which note was payable to The Yoakum State Bank, and payable at The Yoakum State Bank, and which, before maturity, for a valuable consideration, was transferred to First State Bank of Westhoff. The latter bank had failed September 8, 1928, and the Yoakum bank failed September 5, 1928.

"Appellee answered with general demurrer and general denial, and specially answered admitting the execution of the note sued on, and set up that it kept an account with the Yoakum State Bank in which it had deposited funds sufficient to pay off the note, and when the note came due it had on deposit in the Yoakum Bank $2,923.83; that on September 4th or September 5th, appellee's manager went to the bank inquiring about the note, and after being advised by the note teller that she was unable to find it, told her that he wanted to pay the note out of appellee's deposit in the bank, and that when it was found to cancel it and deliver it to the defendant.

"Appellee further pleaded that it did not know the note had been transferred to the First State Bank of Westhoff; that the note was actually in the hands of the Yoakum bank at the date of maturity; and that if the note was not the property of the Yoakum bank at its maturity, that the Yoakum bank was the agent of the Westhoff bank to collect the note, it having been sent there for collection by the Westhoff bank.

"Appellee further pleaded that its deposit in the Yoakum bank had never been repaid to it, and took the position that when the Yoakum bank failed to remit to the Westhoff bank the amount of the note, or failed to credit the account of the Westhoff bank with the same, that the loss should fall upon the Westhoff bank and not upon appellee.

"Upon a trial before the court without a jury, the court below rendered a judgment in favor of appellee. Plaintiff excepted, gave notice of appeal, assigned error, and the case is here for review."

The trial court filed these findings of fact and law:

"4. The Westhoff Bank and Yoakum Bank were substantially under the same management and ownership. The former often purchased from the latter notes it held, given by borrowers at Yoakum, and just before maturity of a note so purchased the Westhoff Bank would send it to the Yoakum Bank. The Yoakum Bank had authority to collect it and either remit the proceeds, or give the Westhoff Bank credit for the proceeds on the books of the Yoakum Bank.

"5. The Westhoff Bank had an account, and money on deposit to its credit in the Yoakum Bank at the time herein mentioned.

"6. During the year 1928 and up to the time that The Yoakum State Bank failed on the evening of September 5, 1928, defendant was a customer of said Yoakum Bank and had accumulated money in said bank for the purpose of paying said note at maturity, and defendant had on deposit in said Yoakum Bank at all times from and after September 1, 1928, more than sufficient to pay the entire amount due on said note. This deposit has not been withdrawn by or paid to defendant or its order, either in whole or in part, except as herein stated.

"7. On August 31, 1928, said Westhoff Bank, without indorsing anything on the note in suit, sent it as it was, bearing the blank indorsement of the Yoakum Bank, to the Yoakum Bank, with other notes which said Yoakum Bank had taken from its customers and transferred to the Westhoff Bank.

"8. The note sued on in this cause reached the Yoakum Bank on September 1, 1928, and thereafter remained in its hands until said Bank was taken over by the Commissioner of Banking of Texas.

"9. Said note matured on September 2, 1928, which was Sunday, and said Yoakum Bank was closed all during that day. The next day, Monday, September 3, 1928, said Yoakum Bank was closed the entire day, as it was the legal holiday known as 'Labor Day.' Said Bank was engaged in business, with its doors open as usual, throughout the business days of Tuesday, September 4th, and Wednesday, September 5th, 1928, receiving deposits and paying checks.

"10. After banking hours, which terminated at 6 P. M., on September 5, 1928, the Banking Commissioner took charge of said Yoakum Bank, declared it insolvent, and he has been ever since liquidating its affairs as an insolvent state bank.

"11. On Wednesday, September 5, 1928, during banking hours, while The Yoakum State Bank was open, and engaged in business, receiving deposits and paying out money, said Frobese, manager of defendant, went to said Bank and requested it to deliver to him the note sued upon in this cause. He was informed by the note teller, who usually attended to the collection of notes in the bank, that the note in suit could not be found at that time. The note teller then offered to give Frobese a receipt showing the payment of the note, but after writing it decided she had best not do so and told Frobese it would be best the see the Cashier. Frobese waited to see the Cashier, but could not do so, and finally told the note teller to transfer the money from the account of defendant in payment of the note.

"12. At some time not precisely shown the notation 'Pd' was placed upon the note. The proof shows that said notation was on the note a few weeks after the two banks failed, but had been erased before it was offered in evidence upon the trial of this cause. Such erasure occurred before said note was sent to the attorneys for the plaintiff for suit.

"13. I find that The Yoakum State Bank accepted the order upon it to pay the note out of defendant's deposits, said deposit being more than sufficient for the purpose, which order existed and was made by reason of the fact that the note was by its terms payable at said The Yoakum State Bank; and also by the verbal order of the manager of defendant to transfer a sufficient amount out of the funds of defendant which it then had on deposit in said Bank to pay said note.

"14. I find that said note was paid by defendant to The Yoakum State Bank.

"15. If it be held that title to the note did not pass back to the Yoakum State Bank, then I find that The Yoakum State Bank was selected by The First State Bank of Westhoff as its agent, for the collection of said note, and the Yoakum Bank was the agent of said Westhoff Bank for such purpose at the times herein mentioned.

"16. I find that The Yoakum State Bank was negligent in not remitting the amount due on said note to The First State Bank of Westhoff, or in not giving the latter bank credit for such proceeds.

"17. I find that the Yoakum State Bank was negligent in that it carelessly negligently failed to transact the business entrusted to it by the Westhoff Bank and negligent in not finding and in not being able to find the note when Frobese called for it.

"18. The loss sustained by The First State Bank of Westhoff in that it did not get the amount owing on said note was caused by and due to the negligence of The Yoakum State Bank.

"Conclusions of Law.

"1. I conclude as a matter of law that said note was paid by defendant to The Yoakum State Bank, of Yoakum, Texas, prior to the time it failed, whether said note was the

property of the Westhoff Bank at maturity, or whether by the facts aforesaid it again became the property of the Yoakum Bank.

"2. If, however, the note was not paid, the failure to secure payment was due to the negligence of the Yoakum State Bank, and the loss resulting therefrom should fall on the one responsible for the fault, the Westhoff Bank, through its agent, and not on defendant."

Appellant assails the judgment through a number of propositions, whereby, in material substance, he contends:

(1) The evidence is insufficient to sustain the findings either that the Yoakum bank accepted appellee's order to charge the note against its account, or that the same was paid.

(2) The Yoakum Bank, being in a failing and insolvent condition when it so received the note for collection—hence without authority at that time to act as collecting agent for another bank—was in the attending circumstances not guilty of such negligence as the maker could complain of in failing either to send to the owner the amount due thereon out of the maker's deposit, or to charge the same to its account, there being no agreement to thus charge, but would have been guilty of fraud, had it undertaken to do either of these things.

(3) When the Yoakum Bank transferred this note without recourse, having thereby parted with all interest therein, it no longer owed the maker any duty whatever concerning it, but merely, on thereafter receiving it back for collection, was required to exercise due diligence as the sender's agent with respect to that business.

■ We conclude that none of these contentions should be sustained, but rather that this counter proposition of the appellee, supported as it is by the appended authorities, undermines them all in support of the trial court's judgment: "The appellee, maker of the note expressly made payable at the Yoakum State Bank, where appellee had funds on deposit at maturity of the note, and at all times thereafter, more than sufficient to pay it, and the note having been sent to such bank for collection just before maturity, and the bank remaining open, receiving and paying out money in the usual way, for all of two full days after maturity of the note, during which appellee expressly instructed the bank to apply its deposit to the payment of the note, and during all of which time and until the bank failed, the note remained in its hands, was discharged from obligation on the note, notwithstanding the failure of the bank to give the owner credit for the amount in accordance with its previous custom or arrangement with the owner. Article 5947, sec. 186, R. C. S.; Baldwin's Bank

v. Smith, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500; Ætna Nat'l Bank v. Fourth Nat'l Bank, 46 N. Y. 82, 88, 7 Am. Rep. 314; National Butchers' & Drovers' Bank v. Hubbell, 117 N. Y. 384, 22 N. E. 1031, 7 L. R. A. 852, 15 Am. St. Rep. 515, 518; Little v. Phenix Bank, 2 Hill (N. Y.) 425; Carroll v. Sweet, 128 N. Y. 19, 27 N. E. 763, 13 L. R. A. 43; Merchants' Nat'l Bank v. Samuel (C. C.) 20 F. 664; Dorchester v. Merchants' Nat'l Bank of Houston, 106 Tex. 201, 163 S. W. 5, 50 L. R. A. (N. S.) 542; Nineteenth Ward Bank v. First Nat'l Bank, 184 Mass. 49, 67 N. E. 670; Smith Roofing & Contracting Co. v. Mitchell, 117 Ga. 772, 45 S. E. 47, 97 Am. St. Rep. 217."

We find no lack of supporting evidence for any of the quoted findings of fact, and so approve them, as well as the conclusions of law drawn therefrom; indeed, we think, there being evidence of sufficient probative force appearing in the statement of facts, further findings might have been stated to the effect that: (1) The directors and officers of the Yoakum bank never did either close or admit that it was insolvent; (2) the examination made by appellant, which had been going on for several days prior thereto, did not disclose that it was insolvent until after 6 o'clock, p. m. of September 5, 1928; (3) the appellee knew of no such impending insolvency, if it existed, having deposited $240 therein on September 5th, its last open day; (4) the penciled notation "Pd," which undisputedly was on the note when appellant took charge of the Yoakum bank, had been put there prior to that time by its note teller, or some other officer of that bank.

Should any of these additional findings be considered essential, they will be deemed to have been made.

■ The at least initial vice in appellant's position seems to be his assumption that the Yoakum bank was continuously insolvent within the meaning of R. S., article 369, from and after the time of its receipt of this note from its correspondent, and in such a way as to be operative against the appellee, whereas there is no such showing in the evidence; rather the contrary appears, as we view the situation, since that statute mandatorily requires the banking commissioner to "immediately close said banking corporation and take charge of all the property and effects thereof," if his examination of it shall disclose that it is insolvent; there being nothing here even tending otherwise, the presumption of law plainly is that he did his duty; at any rate, it admittedly does appear that the appellee was ignorant of any such weakness in the bank, having made its new deposit a few hours before it failed.

In such circumstances it has been held that payments made by a bank to its depositor while it is still conducting its business, even though it is then insolvent, do not constitute preferences and will be protected, if the depositor had no notice of the insolvency. 7 Corpus Juris, page 728, paragraph 483 (2), footnote 10, and cited authorities.

■ Our further views on the question presented are so well stated in these extracts from the appellee's brief, that they are quoted with approval, in conclusion of this discussion:

"The note, by its express terms, was payable at The Yoakum State Bank on September 2, 1928. By statute, where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon. Article 5937, sec. 87, R. C. S. The note in suit therefore was equivalent to a check by appellee on Yoakum State Bank, for the amount due on the note, since appellee had ample funds in said bank with which to pay it. Ætna Nat. Bank v. Fourth Nat. Bank, 46 N. Y. 82, 88, 7 Am. Rep. 314; Baldwin's Bank v. Smith, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500.

"The Yoakum Bank was the agent of the Westhoff Bank for collection of this note. National Butchers' & Drovers' Bank v. Hubbell, 117 N. Y. 384, 22 N. E. 1031, 7 L. R. A. 852, 15 Am. St. Rep. 515, 518. On September 4, 1928, the next business day after this note matured (September 2nd being Sunday and September 3rd being a holiday), the situation was precisely that the agent of the Westhoff Bank had in its hands a check by the appellee, payable to the agent, on a bank in Yoakum where the appellee had ample funds to pay the same. The evidence is that this bank did business in the regular way during the whole of September 4th and during all of the business hours of the next day, September 5th, during which time it received deposits and paid out checks. There is no evidence that any check or liability of the bank was dishonored or refused payment at any time before 6 p. m. of Wednesday, September 5th, when the agents of the State Banking Department took charge of the bank and closed it for liquidation. The officers and directors of the bank did not admit that it was insolvent, and the agents of the State Banking Department, although present during the 4th and 5th, did not interpose and stop the bank from doing business. It cannot be disputed that this item would have been paid on September 4th or 5th if the owner, First State Bank of Westhoff, had in person demanded payment over the counter. Indeed, the cashier of the bank testified upon the trial that the fact that Miss Buenger did not get the note for appellee's

manager on September 5th was probably due to the fact that the employees of the bank were heavily overworked during all that period, and the cashier had not been able to attend to the accumulation of business, Saturday was the heaviest day's work they ever had in the bank.

"The case then comes to the point, that the holder of a check, which would have been paid by the bank if demanded by the holder, neglects and fails to collect it for a period of two whole business days, after which the bank suspended, resulting in loss to the maker of the check or to the payee of same. The failure to present a check within a reasonable time exonerates the drawer where there has been a loss. Little v. Phenix Bank, 2 Hill, 425; Carroll v. Sweet, 128 N. Y. 19, 27 N. E. 763, 13 L. R. A. 43; Baldwin's Bank v. Smith, supra; Merchants' Nat. Bank v. Samuel (C. C.) 20 F. 664. Our Texas Negotiable Instruments Act is to the same effect, providing, as it does, in article 5947, § 186: 'A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.'

"The note, equivalent to a check by appellee, reached the Yoakum Bank on September 1st, which was Saturday. Appellee had accumulated funds in the hands of said bank with which to pay it. The bank not only held the check, but at the same time held the funds for its payment. The amount of the transaction was not insignificant. No reason for the delay in charging the note to appellee and crediting the amount to the Westhoff Bank is shown by the evidence except press of work upon the cashier. The transaction would have required nothing more than bookkeeping entries, charging the amount to appellee's account, and crediting the Westhoff Bank. At most only a few minutes would have been required to do this. Holding the item until the evening of September 5th, without attention especially when during this time appellee's manager, Mr. Frobese, called for the note and instructed the bank to charge it to appellee, thus specially calling the attention of the bank to the item, was an unreasonable delay, and discharged appellee from liability thereon to the extent of the loss caused by the delay, to-wit, the amount of the note.

"The reason for discharging the drawer is that if the holder had presented the check promptly, he would have received the money. The drawer should not be held for the delay. * * *

"Section 185 of the Negotiable Instruments Act (Rev. St. 1925, art. 5947, § 185) makes all provisions of that law applicable to a bill of exchange payable on demand apply to a check. Section 137 (Rev. St. 1925, art.

5941, § 137) provides that where a bill is delivered for acceptance and the drawee refuses within twenty-four hours after delivery to return the bill, he will be deemed to have accepted it. * * *

 "We think sections 136, 137 of the Negotiable Instruments Act (Rev. St. 1925, art. 5941, §§ 136, 137), and the case of Dorchester v. Merchants' National Bank of Houston, 106 Tex. 201, 163 S. W. 5, 50 L. R. A. (N. S.) 542, at least furnish a guide in respect to the degree of diligence required of a collecting bank. Here The Yoakum State Bank was not only the collecting agent, but it had the funds of the payee in its hands for four days after receiving the note for collection, and for two entire business days after maturity of the note. If the Westhoff bank had sent this note for collection to some other bank in Yoakum rather than to Yoakum State Bank, it would have been the duty of such other bank, the collecting agent, acting for the Westhoff bank, its principal, under Dorchester v. Merchants' National Bank of Houston, supra, to have presented this note to Yoakum State Bank for payment within twenty-four hours. Presentment for payment means collection of the paper, since it is presumed that the maker will pay a note at maturity. It was none the less the duty of Yoakum State Bank, which the Westhoff bank saw fit to entrust with the business, to collect the paper, or give the transaction proper attention and make proper disposition of it, within twenty-four hours. The Yoakum State Bank, the collecting agent, failed and neglected to perform its duty with reasonable and proper diligence, resulting in loss. The only neglect of duty by any one in this case was that of the collecting agent, Yoakum State Bank. * * *

"The absence from this case of evidence of the specific agreement by the bank or its employes to transfer the funds is the only circumstance wherein this case differs, so far as this question is concerned, from Baldwin's Bank v. Smith, supra. But in this case we find that shortly after both banks failed, and while the note was still in the hands of the State banking authorities, it bore the notation 'Pd' on its face. This fact is undisputed. The evidence does not show who made the notation, but it is certain that it was not made by the appellee, or any of its officers or agents, because they never had the paper in their possession, and never saw it until their attorney inspected it in the hands of the officials of the Banking Department. He perceived the notation 'Pd' on it, and immediately called the attention of the officer in custody of the note to it. It is not likely that any one else besides an employee of Yoakum State Bank made the notation. The circumstances justify the inference that Miss Buenger, or some other employee of Yoakum State Bank, found the note after Mr. Frobese had called for it, and then made the notation on it. The cashier said that the custom between Yoakum State Bank and the Westhoff Bank was that when such a note would be collected by the Yoakum Bank for the Westhoff Bank, the former would simply make deposit tickets in duplicate, crediting the Westhoff Bank with the money and mailing it a duplicate deposit ticket. He said the original deposit ticket would be posted in the ledger of Yoakum State Bank. It is common knowledge that the mechanical work of posting up a ledger from the tickets, or day book, occurs after the various transactions with the customers have been had. It would not have been necessary, to constitute payment of this item, therefore, for all of the posting and other bookkeeping entries to be completed. * * * The only consistent inference from the circumstances is that the notation 'Pd' was made while the Yoakum State Bank was still a going concern, by some of its employees, most likely Miss Buenger."

The trial court's judgment has been affirmed.

Affirmed.