## Pool v. Commonwealth.

Feb. 5, 1946.

White & Clark for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

The appellant was indicted for the willful murder of Mrs. Virginia Harris. He entered a plea of guilty and was given the death penalty. He urges the following grounds for reversal:

First: The court misinstructed the jury.

Second: The verdict was against the law and the evidence.

The facts are as follows:

The appellant and deceased's husband were tenants on the farm of George Harris in Christian County. On the afternoon of April 26, 1945, appellant went to a barn on the Harris farm where Mrs. Harris was milking. According to the testimony Mrs. Harris asked the appellant to go to the loft and throw down some hay. He asked her if she would go up first. Whereupon, she picked up a small plank and struck him. He took the plank from her and beat her over the head with it, causing the injuries which resulted in her death.

Shortly after the appellant's arrest he made the following confession:

"May 1st, 1945. I, Charlie Poole, make this statement in the presence of W. E. Rogers, Jr., Howard Major and George Harris, fully and voluntarily, without threat of any harm being done me, nor without promise of immunity of prosecution.

"On Thursday, April 26th, 1945, I had been drinking a good deal. About 5 o'clock in the evening I went down to the stable on Mr. George Harris' farm where Mrs. Virginia Harris was milking; she had her little boy about two years old, and her daughter about five years old with her. I went into the stable where they were, and I asked Mrs. Harris, 'How about going up into the loft with me.' She got mad and threw a plank at me. I then picked up the plank, which was about three feet long, 3 inches wide, and an inch thick. I hit her on the head hard with the plank three or four times; she fell down staggering, and I picked her up and carried her just outside the stable and put her on the ground over the gap. I then went back into the stable and let the mules out; one of them knocked the little girl down. I did not hit her. After I had hit Mrs. Harris I did not have intercourse with her. I then left the stable and went

over to my house and stayed awhile. I then went up to Mrs. George Harris' house and borrowed a dime to get a gasget for the tractor, it was then about 6:30. I came to Hopkinsville, Kentucky, got the gasget and I then began to worry about what I had done. I told Mr. Harris that a mule had hurt Mrs. Harris. I don't know why I killed Mrs. Harris. I must have lost my mind.

> His
> "Charlie Pool"
> Mark

Appellant, being financially unable to employ counsel, was represented by two attorneys appointed by the court. They have filed a very short brief indicating that they perceive no errors in the record. On the other hand, the Attorney General has taken the position that the appellant did not have a fair trial. He argues that the testimony of the appellant at the trial was, in effect, a change of his plea of guilty to willful murder to voluntary manslaughter, and that the court erred in failing to instruct the jury on voluntary manslaughter.

The only instruction given the jury by the court was one of willful murder. The appellant testified that he resided on the farm of George Harris and had lived there all his life; that he was forty years of age; that on the day of the crime he went to Hopkinsville and bought some whiskey and drank a part of it in the forenoon. He said that he drank some more of it about 4 o'clock in the afternoon, shortly before he went to the barn where his victim was milking. The pertinent part of his testimony is as follows:

"* * * A. I got the clevis. Mr. Boyd's wife called me.

"Q. Where was she? A. In the hall of the stable. She asked me to throw down some hay. I asked was she going ahead of me.

"Q. Where was the hay? A. In the loft.

"Q. Then what happened? A. She hit me with the stick.

"Q. Was that piece three inches wide, three feet long and an inch thick? A. Yes, sir.

"Q. Was that the same piece you hit her with? A. Yes, sir.

"Q. Why did you hit her? A. She hit me, I hit her before I knew it.

"Q. What effect did it have on you when she struck at you with that piece of timber? A. It made me mad before I knew it.

"Q. You grabbed it, and struck her? A. Yes, sir.

"Q. How many times did you hit her? A. Four or five times.

"Q. Where was she during the time you struck her? A. In the hall of the stable.

"Q. Was she up or down? A. She was up.

"Q. She was up during the time you struck her those four or five licks? A. Yes, sir.

"Q. You never knocked her down? A. No sir.

"Q. When did she fall? A. After she left the stable.

"Q She left the stable after you hit her? A. Yes, sir.

"Q. And fell outside the stable? A. Yes, sir.

"Q. Then what happened? A. I let the mules out. The mules got out. I didn't know the little girl was in the hall of the stable. The mule got out and run over the girl.

"Q. What became of Mrs. Harris after she fell? What did you do with her? A. I took her by the arm and took her outside away from where the mules were.

"Q. Then what did you do? A. I came on home.

"Q. Did you tell anybody anything about this? A. Not then.

"Q. When did you tell them about it? A. About six o'clock.

"Q. Whom did you tell? A. Boyd.

"Q. Boyd Harris? A. Yes, sir.

"Q. Did you tell him what happened? A. I told him she was hurt.

"Q. There was a statement read while ago before the jury. Did that statement contain all you said on this

occasion to those people at the penitentiary? A. They read it. I didn't understand it.

"Q. Did you tell them about her asking you to go up in the loft and get some hay? A. Yes, sir."

George Harris, the person for whom the appellant worked, testified that the appellant's reputation had always been good.

While it does not appear from the record, it seems to be conceded in the briefs that the appellant is a person of low mentality, and it may be assumed that he did not know the effect of the plea which he entered. From the beginning he told the truth about what happened, and it seems clear from his confession and from his testimony at the trial that an instruction on voluntary manslaughter should have been given. Failure to do this was error.

In Am. Jur. Vol. 14, Section 270, Page 951, it is said: "A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. Accordingly, it will not bind the defendant where it is entered through intimidation, however slight; and a judgment is not properly entered on it where the court does not satisfy itself of the voluntary character of the plea. It has sometimes been held that it must be made a matter of record that the plea was voluntary and uninfluenced by fear."

It is quite apparent from the testimony quoted that the appellant was attempting to explain that he was guilty of manslaughter but not of murder, and it was the duty of the trial judge to change his plea when he had heard this evidence. In the footnotes on page 398 of Vol. 16, Corpus Juris, Section 730, we find the following: "When, upon arraignment, an accused person enters a plea of 'guilty' and at the same time makes a statement which discloses that the entry of this formal plea is not in fact a plea of 'guilty' of the offense as charged in the complaint or information, but merely an admission of the truth of certain facts set forth therein, or when the statement thus made contains additional allegations of fact which if true would preclude a finding of 'guilty' of the offense charged, the trial judge, before proceeding with the trial, should order the substitution

of a plea of 'not guilty' for that of 'guilty' as entered by accused.'' See also 22 C. J. S., Criminal Law, sec. 422.

In criminal actions the trial judge must give the whole law of the case, and the defendant is not required to request this. When the court failed to give the voluntary manslaughter instruction he failed to give the whole law of the case because the evidence justified such an instruction.

Wherefore, the case is reversed for proceedings consistent with the views herein set forth.