Argued September 2, reversed and remanded December 6, 1952,
petition for rehearing denied February 11, 1953

# HUFFMAN *v.* ALEXANDER

251 P. 2d 87
253 P. 2d 289

*Merlin Estep,* of Salem, argued the cause for appellant. On the brief were Hewitt, Estep & Sorensen, of Salem.

*Lloyd G. Hammel,* Assistant Attorney General of Salem, argued the cause for respondent. With him on the brief was George Neuner, Attorney General, of Salem.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

BRAND, C. J.

■ This is an appeal from an order dismissing a petition for a writ of habeas corpus and remanding the petitioner to the custody of the warden of the penitentiary. The petitioner, Sam Huffman, on 22 August 1951, filed in the circuit court for Marion county a petition for a writ of habeas corpus against George Alexander as warden of the state penitentiary. He alleges that he has been incarcerated in the penitentiary since 21 September 1950. The "cause and pretense" of such imprisonment being the fact that on said date the circuit court of the state of Oregon for Lincoln county sentenced the petitioner to a maximum term in the penitentiary of three years. The petitioner alleges

that he is not imprisoned by virtue of any judgment of a competent tribunal of a criminal jurisdiction or of an execution thereon. The petition complies as to form with the other requirements set forth in OCLA, §§ 11-402 and 11-404. Since the issues are made up by the reply to the return on the writ we omit the petition for the writ which "ceases to function when the writ is issued." *In re Davenport,* 114 Or 650, 236 P 758, 25 Am Jur, Habeas Corpus, § 143, p. 243. As required by statute, the petition sets forth a copy of the judgment and sentence by virtue of which he is confined. It reads as follows:

"Now at this time the defendant, Sam Huffman, appeared in open court in custody of the sheriff of Lincoln County, and on his own motion having waived the indictment by a Grand Jury and now waives further time to plead to the information charging him with the crime of larceny by bailee, filed against him by the District Attorney of Lincoln County, Oregon, and said defendant being fully advised in the premises by the court of his right to demand an indictment by the Grand Jury of said county, said defendant did then and there waive his said right of indictment as aforesaid, and requests the court here and now to accept his plea of guilty to the information filed by the District Attorney and requests the court to pass sentence without further delay, on said information charging him with the crime of larceny by bailee.

"Thereupon the court instructed the District Attorney to arraign said defendant, which was immediately done, and when asked to enter his plea to said information defendant answered 'Guilty as Charged in Said Information.'

"NOW, THEREFORE, It is considered, ordered and adjudged by the court that the defendant, Sam Huffman is guilty of the crime of larceny by bailee, and that he be confined in the penitentiary

at Salem, Oregon, for a period without limitation of time, the maximum of which is hereby fixed at three years * * *.''

On 22 August the judge of the Marion County circuit court ordered that a writ of habeas corpus issue. By way of return to the writ, the defendant warden, in addition to formal matters, set forth as his authority for the imprisonment the above mentioned judgment of the circuit court of Lincoln county. The traverse of the return to the writ of habeas corpus reads in part as follows:

## ''II

''Denies each and every allegation contained in paragraph III, save and except as herein specifically admitted or alleged.

## ''III

''The imprisonment, incarceration and restraint of plaintiff was and is illegal and the illegality thereof consists of the following:

''1. The plaintiff's arrest was brought about by the fraudulent, perjured and malicious statements of one Roy Myers, then of Cutler City, Oregon, who represented to the authorities that the plaintiff had committed the crime stated in the order of sentence referred to in defendant's return on file herein, though the plaintiff was and is innocent of said crime, and the said Roy Myers at all times here involved had actual knowledge that the plaintiff was innocent.

''2. The plaintiff has little or no education, is almost totally illiterate, and does not and never has had any knowledge or understanding whatever of legal proceedings, and, specifically, the plaintiff had neither the ability to understand, nor did he in fact understand the proceedings subsequent to his arrest and which terminated in the order of sentence under which he is now held. Furthermore, plaintiff had no knowledge of the rights of one accused of

crime, and, specifically, plaintiff did not know and was not informed of his legal rights in the matter here involved.

"3. From the time when he was taken into custody, under arrest for the crime stated in the purported order of sentence hereinabove mentioned, until the time of his incarceration in the Oregon State Penitentiary the plaintiff was at all times unqualifiedly denied the assistance of legal counsel, and was at all times denied permission to contact counsel in any manner whatsoever, though during said period the plaintiff often demanded of those in whose custody he was held, and whose exact identity the plaintiff does not and never has known, that he be permitted to contact legal counsel and that he be given the assistance of legal counsel.

"4. The plaintiff was not indicted by a grand jury, and although, while in jail, plaintiff signed a paper entitled "WAIVER," his signature thereon was obtained by the false, fraudulent and malicious representations of the person who presented it to him, and whose identity the plaintiff does not and never has known, that the said paper was of no consequence and that his signature thereon would speed his release from jail; and, in fact, plaintiff did not know the true nature of the said paper at the time he signed it, nor did he ever intend to waive indictment.

"5. At no time here involved did the plaintiff intend to waive his right to legal counsel.

"6. When plaintiff was taken into court in connection with the proceedings here involved, he was asked several isolated questions by the presiding judge, some of which he did not understand, but nevertheless answered to the best of his ability, and upon the basis of the plaintiff's answers to said questions the said judge pronounced plaintiff guilty of the crime of larceny by bailee, though the said judge had not questioned plaintiff concerning the ownership of the property in question, which property in fact was owned by plaintiff at

the time when plaintiff was alleged to have committed the crime stated.

"7. Upon learning that the judge had construed his answers, as aforesaid, to be equivalent to a plea of guilty, the plaintiff requested and was denied permission to change his plea.

"8. Although both the said presiding judge and the district attorney did, in court, and in plaintiff's presence question the said Roy Myers, at no time while in court, as aforesaid, was the plaintiff permitted to question the said Roy Myers, or to subpoena witnesses, or to contact witnesses in any other manner, in his own behalf, although plaintiff repeatedly requested such permission. If plaintiff had been given any opportunity whatever to contact witnesses, as aforesaid, he could have and would have then and there proven his innocence, said witnesses then being in the immediate vicinity, and having actual and complete knowledge of all of the facts involved in the matter.

"9. At the time of his incarceration in the Oregon State Penitentiary, and continuously thereafter, the plaintiff desired to prosecute an appeal to the Supreme Court of Oregon, and pursuant to said desire the plaintiff made every possible effort to gain access to the courts. Specifically,

"(a) plaintiff wrote numerous letters to legal counsel requesting their services, and to other persons requesting them to obtain legal assistance for him, each and every of said letters being written so as to comply with all prison regulations pertaining to the writing of letters, and in each and every instance, except as hereinafter alleged, the petitioner's said letters were destroyed and withheld from the United States Mails by those to whom they were properly submitted for censoring and mailing; and

"(b) the plaintiff personally requested the defendant to permit him to contact legal counsel by any other means whatsoever.

"Each and every effort and request of plaintiff

to gain access to the courts, as hereinabove alleged, was denied without qualification until after the time limited by law for the filing of a notice of appeal had expired.

"IV

"Plaintiff denies that the Journal Entry, a certified copy of which is attached to and by reference made a part of the Return to Writ of Habeas Corpus herein, marked "Exhibit A," states the true facts of the judicial record; and alleges that the true judicial record of the proceedings is as stated hereinabove; and, specifically, plaintiff alleges that that portion of said Journal Entry constituting the words, 'Guilty as Charged in Said Information,' shown as the last six words of the third paragraph of the body of 'EXHIBIT A,' attached to defendant's return on file herein, is entirely false, fraudulent and malicious."

A demurrer to the traverse was overruled. The order of the court dismissing the writ of habeas corpus recites that the case was tried:

" * * * upon the sufficiency of plaintiff's traverse to defendant's return to plaintiff's writ of habeas corpus with respect to plaintiff's allegation that his incarceration in the Oregon state penitentiary is illegal and void because the Circuit Court of the state of Oregon for the county of Lincoln was without jurisdiction to sentence plaintiff to the Oregon state penitentiary because said court denied plaintiff his right to legal counsel and plaintiff never waived the right to counsel granted him under Article I, § 11, Oregon Constitution. * * *"

It is clear that the only issue decided by the trial court concerned the alleged denial of the right to counsel and the question of the waiver of that right, for the bill of exceptions signed by the judge certifies that:

"* * * by an opinion filed and made a part of the record herein the said Court ruled that the said

Demurrer was overruled solely upon the ground that the Plaintiff was entitled to present his evidence relative to the question of whether or not he had waived his right to legal counsel; and that the other allegations of the Traverse did not present proper matters to be heard on the evidence."

The case was tried upon the limited issues thus presented. The plaintiff presented his own testimony and that of three inmates of the county jail at Toledo and rested. Thereupon, without hearing any testimony on behalf of the defendant, the court sustained a motion to dismiss the petition and remanded the plaintiff to custody. The court held that the petitioner was being legally detained by reason of a valid judgment and commitment and said:

"* * * plaintiff's testimony clearly indicated that the said Circuit Court of the state of Oregon for the county of Lincoln did properly inform plaintiff of his right to obtain counsel and gave plaintiff an opportunity to obtain counsel when he was arraigned, and plaintiff waived his right to be represented by counsel. The court then examined the defendant's return to plaintiff's writ of habeas corpus and found said return to be sufficient in all respects. * * *"

The case is here upon appeal.

The first issue presented in plaintiff's reply to the return is stated as follows:

"The plaintiff's arrest was brought about by the fraudulent, perjured and malicious statements of one Roy Myers, then of Cutler City, Oregon, who represented to the authorities that the plaintiff had committed the crime stated in the order of sentence referred to in defendant's return on file herein, though the plaintiff was and is innocent of said crime, and the said Roy Myers at all times here involved had actual knowledge that the plaintiff was innocent."

■ As indicated in the bill of exceptions, the trial court refused to receive evidence or to consider the issue thus tendered. This contention has not been made the subject of any assignment of error or of any exception in the bill and was properly waived. This is not a case of conviction after trial upon a plea of not guilty wherein testimony known by the prosecution to be perjured was instrumental in producing the conviction. Myers was at most a complaining witness who may have induced the filing of the charge. The sentence was based upon a plea of guilty.

In the plaintiff's reply to the return of the defendant Alexander, he alleges:

> "The plaintiff was not indicted by a grand jury, and although, while in jail, plaintiff signed a paper entitled 'WAIVER,' his signature thereon was obtained by the false, fraudulent and malicious representations of the person who presented it to him, and whose identity the plaintiff does not and never has known, that the said paper was of no consequence and that his signature thereon would speed his release from jail; and, in fact, plaintiff did not know the true nature of the said paper at the time he signed it, nor did he ever intend to waive indictment."

The first assignment of error is that:

> "The Court erred in ruling that the question of whether or not the Appellant had waived indictment by the grand jury could not be considered in this proceeding."

Postponing our comment upon the view expressed by the United States Supreme Court that "A court's jurisdiction at the beginning of trial may be lost" by reason of fundamental error in the course of the proceedings, (*Johnson v. Zerbst*, 304 US 458, 82 L ed 1461)

we will first consider assignment of error No. 1 from the traditional standpoint of state law.

In *Harrington v. Jones,* 53 Or 237, 239, 99 P 935, this court said:

" * * * It is familiar law that habeas corpus proceedings cannot be resorted to for the purpose of reviewing judgments or decrees of a court of competent jurisdiction for either errors of fact or law. It cannot be made to serve the purpose of an appeal. But, unless the court issuing the commitment had jurisdiction of the person and the subject-matter, its judgment is void, and may be questioned in a habeas corpus proceeding."

As said in *Ex parte Tice,* 32 Or 179, 184, 49 P 1038:

" * * * It has been repeatedly held that, unless the judgment under which a person is committed to the custody of an officer is void, the court will not, on a habeas corpus proceeding, discharge the prisoner, and that irregularities appearing in the record are insufficient to obtain his release * * *."

The same court said:

"It being conceded that the commitment under which plaintiff is restrained of his liberty emanated from a court of competent authority, having jurisdiction of the subject matter and person, the only question presented in a habeas corpus proceeding is whether such process is void for illegality * * *."

See also *Ex parte Watkins,* 28 US (3 Pet) 193, (opinion by Marshall, C. J.); *Ex parte Foster,* 69 Or 319, 322, 138 P 849; *Ex parte Jung Shing,* 74 Or 372, 377, 145 P 637; *Kelley v. Meyers,* 124 Or 322, 263 P 903; *Macomber v. State,* 181 Or 208, 180 P2d 793.

In the recent case of *Garner v. Alexander,* 167 Or 670, 120 P2d 238, the rule defining the proper scope of the writ of habeas corpus was stated somewhat more

broadly. The court was no doubt influenced by the multitude of cases in the United States Supreme Court which have held that judgments of conviction in state courts will be declared void if the proceedings were in violation of the constitutional rights of an accused person under the Fourteenth Amendment even though at the inception of the trial the court had jurisdiction of the person of the accused and of the subject-matter of the action, and that such declaration may under certain circumstances be made in habeas corpus proceedings. After making the usual statement that in habeas corpus the question "is whether the judgment or the commitment issued thereunder is void", this court in the Garner case quoted with approval from Ferris on Extraordinary Legal Remedies, § 18, in part as follows:

"The only ground on which any court, without special statutory authority, will give relief on habeas corpus, is where there is want of jurisdiction over the person or the cause, *or some other matter rendering the proceeding void.* Lack of jurisdiction of the subject-matter, jurisdiction of the person, *or jurisdiction to render the particular judgment assailed,* include all cases which render a judgment void or subject to attack in habeas corpus. * * *" (Italics ours.)

Again we quoted with approval from *Kaizo v. Henry,* 211 US 146, 53 L ed 125, as follows:

"But no court may properly release a person under conviction and sentence of another court, unless for want of jurisdiction of the cause or person, *or for some other matter rendering its proceedings void.* * * *" (Italics ours.)

Again in *Rust v. Pratt,* 157 Or 505, 72 P2d 533, this court said:

"It is only when the court pronounces a judg-

ment in a criminal case, *which is not authorized by law under any circumstances in the particular case made by the pleadings, whether the trial has proceeded regularly or otherwise,* that judgment can be said to be void so as to justify the discharge of the defendant held in custody by such judgment. * * *" (Italics ours.)

■ Thus it appears from the decisions of this court that circumstances may arise in connection with the criminal prosecution which will render the judgment void, even though the court had jurisdiction, in the narrow sense, over person and subject-matter at the inception of the proceedings. In any event, habeas corpus will lie if the court was without jurisdiction to try the defendant at all. Our first question is whether an Oregon court has jurisdiction to try a defendant on an information in the absence of a waiver of indictment.

Article VII, section 18 of the Oregon constitution as adopted in 1927 contains the following provision:

"* * * No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this state, except upon indictment found by a grand jury; * * * provided further, however, that if any person appear before any judge of the circuit court and waive indictment, such person may be charged in such court with any such crime or misdemeanor on information filed by the district attorney. * * *"

The general rule has been stated as follows:

"It is essential to the validity of a conviction not only that the court have jurisdiction of the crime, but that its jurisdiction be invoked in the manner sanctioned by law. Therefore, if the crime of which the defendant has been convicted is one

for which he could be held to answer only upon the presentment or indictment of a grand jury, and he has not been indicted or presented, his conviction is void, and he may be released on habeas corpus. * * *'' 25 Am Jur, Habeas Corpus, § 38.

In *Ex parte Bain,* 121 US 1, 30 L ed 849, the defendant was indicted by a federal grand jury, but before trial the indictment was changed without resubmission to that body. The defendant was tried and convicted on the indictment thus amended. Thereafter he sought release upon habeas corpus. The United States Supreme Court cited the Fifth Amendment which provides that no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, with certain exceptions not material to the case. It was held that the indictment on which trial was had was "no indictment of a grand jury." The court said:

"* * * It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the Constitution, can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. * * *''

In *Ex parte Wilson,* 114 US 417, 29 L ed 89, the Supreme Court held that the trial court exceeded its jurisdiction when the trial was based upon an information instead of the required indictment. The de-

cision was based on the Fifth Amendment. See also *United States, Carr v. DeWalt,* 128 US 393, 32 L ed 485; *Ex parte Hammond,* 36 Okla Cr 387, 254 P 759.

■ While the provision concerning indictment in the Fifth Amendment is inapplicable to state prosecutions, the same rule must be applied under Article VII, section 18 of the Oregon constitution.

■ It follows from the express language of the constitutional provision and from the authorities cited that unless a defendant validly waives indictment he cannot be tried upon information filed by the district attorney. A judgment rendered upon an information without waiver of indictment would be void. We postpone consideration of the rule requiring the exhaustion of other remedies before resorting to habeas corpus. We hold that the plaintiff's reply presents an issue of constitutional right. The plaintiff was not permitted to present testimony on this issue. He was entitled to do so unless we are required to hold that the recital of waiver in the judicial record imports absolute verity which cannot be attacked by evidence from outside the record. We will now consider that question. The complete record is before us. Plaintiff admits he signed a paper entitled a waiver. It reads as follows:

"The undersigned, Sam Huffman, having been accused of the crime of larceny by bailee, committed in Lincoln County, Oregon on August 1, 1950, and being fully advised as to my statutory and constitutional rights, including my right to have said matter presented to the Grand Jury, and after being so advised, freely and voluntarily waive presentment of said matter to the Grand Jury and consent to the filing of an information by the District Attorney of Lincoln County, Oregon charging me with the crime of larceny by bailee."

We quote the pertinent portion of the order of the trial judge:

"It appearing to the Court that one Sam Huffman is charged, by the law enforcement officers of the State of Oregon, for Lincoln County, with the crime of larceny by bailee and now at this time said defendant, Sam Huffman, having heretofore expressed his desire to waive indictment and presentment by the Grand Jury of said county, for said crime, and having communicated to the District Attorney his desire to waive indictment, as aforesaid, and to enter his plea of guilty to said charge and now, in open court, states that he waives the finding and presentment of an indictment by the Grand Jury of said county, charging him with the crime of larceny by bailee, and requests the Court to enter an order authorizing and directing that the waiver of defendant be entered in the records of this court and directing the District Attorney to file in this court an information charging the said Sam Huffman with the crime of larceny by bailee. And the Court being fully advised in the premises, does here and now fully advise said Sam Huffman of his right to demand indictment for said crime by the Grand Jury of the county, but notwithstanding said defendant still waives his right to being indicted and requests proceedings in accordance with the foregoing waiver.

"THEREFORE, IT IS ORDERED AND ADJUDGED, this 18th day of September 1950 that said waiver be entered in the records of this court, and

"IT IS FURTHER ORDERED, that the District Attorney for Lincoln County, Oregon, may file in this court, instanter, an information charging said defendant Sam Huffman with the crime of larceny by bailee."

The information which was filed by the district attorney also recited the appearance of the defendant before the judge and his waiver of the indictment. As

against this judicial record there stands plaintiff's allegation that the waiver was obtained by fraud; that plaintiff did not know the true nature of the paper, and did not intend to waive indictment, together with his allegation that he has little or no education, "is almost illiterate" and could not and did not understand the proceedings subsequent to his arrest, and that "From the time when he was taken into custody, * * * until the time of his incarceration in the Oregon State Penitentiary the plaintiff was at all times unqualifiedly denied the assistance of legal counsel", etc.

In attempting to arrive at the true rule, our course has carried us through a maize of conflicting decisions, both federal and state, the conflicts being not alone between jurisdictions, but also being within a single jurisdiction. One distinction must be kept in mind. We find two different types of attack by habeas corpus upon judgments of conviction. By the first, the plaintiff expressly or by implication admits that the recitals in the record as to what was actually said and done in open court are true, but he seeks to present evidence outside of the judicial record which goes behind but does not contradict the essential recitals thereof. Illustrations of this type include cases in which a waiver of some constitutional right was induced by fraud or was the result of gross ignorance or the like. By the second method of attack the plaintiff alleges and seeks to prove that the events recited in the judicial record in fact never happened. The first method goes behind the record to invalidate it but does not directly contradict it. The second challenges the truth of the judicial recital itself.

We will first consider the right of the plaintiff to employ the first method of attack upon his conviction

by presenting evidence tending to invalidate but not directly to contradict the essential recitals of the judicial record.

In *State v. Lillie,* 172 Or 194, 139 P2d 576, the district attorney filed an information charging larceny by bailee. The defendant was convicted and took a direct appeal to this court, contending that the trial court was without jurisdiction because no valid waiver of indictment had been made. There was no bill of exceptions, and legal considerations only were presented on the basis of the judicial record. The court cited *In re Application of Loundagin,* 129 Or 652, 278 P 950, and said:

> "* * * it will be presumed, as the Loundagin case holds, that the judge did his duty, there being nothing in the record to indicate the contrary. The defendant argues that the Loundagin case is not apposite because it was a habeas corpus proceeding. But that is a distinction without a difference, since the question here is the identical question so frequently raised on habeas corpus—a claim of want of jurisdiction appearing on the face of the record. In any event, the principle announced is one not peculiar to habeas corpus, but is of general application."

The court also said:

> "There is a rebuttable presumption that official duty was regularly performed (§ 2-407, subd. 15), and there is nothing in the present record to overcome the presumption that the requirements of the Code to which attention has been called were not all complied with. * * * *"

It was held in that case that the recital in the order of the court imported absolute verity which cannot be contradicted unless set aside or reversed. Bearing in mind that there was no evidence except the judicial

record, it is clear that there is nothing in that case which is inconsistent with the proposition that the return setting forth the judicial record and the presumptions supporting it may be overcome and "set aside" in a habeas corpus case where there is evidence of fraud outside of the record and resulting in deprivation of constitutional right.

Does the judicial order concerning waiver by the plaintiff conclusively foreclose the plaintiff's right to introduce evidence of the alleged fraud in securing the waiver? The Oregon statute authorizes every person imprisoned to prosecute a writ of habeas corpus, except as provided in the statute. OCLA, § 11-401. Persons imprisoned or restrained by virtue of the judgment of a competent tribunal cannot prosecute the writ. OCLA, § 11-402. The return of the writ, if the defendant has the party in his custody, must state the "authority and true cause of such imprisonment or restraint, setting forth the same at large;" and a copy of the written authority shall be annexed to the return. OCLA, § 11-408. In his reply to the return the plaintiff may "controvert any of the material facts set forth in the return, or he may allege therein any fact to show, either that his imprisonment or restraint is unlawful, or that he is entitled to his discharge;" OCLA, § 11-422. See *Harrington v. Jones*, 53 Or 237, 99 P 935.

The Attorney General, in behalf of the defendant, asserts that "A judgment of a court of criminal jurisdiction valid on its face imports absolute verity and may not be collaterally attacked in a habeas corpus proceeding by impeachment or contradiction of jurisdictional facts stated therein", and relies upon OCLA, § 11-417 which provides in part, "But no court or

judge, on the return of a writ of habeas corpus, has power to inquire into the legality or justice of any order, judgment, or process specified in section 11-402 * * *." This section immediately follows OCLA, § 11-416 which provides:

"If it appear on the return that the prisoner is in custody by virtue of an order or civil process of any court legally constituted, or issued by an officer in the course of judicial proceedings before him, authorized by law, such prisoner shall only be discharged in one of the following cases:

* * * * *

"(3) When the order or process is defective in some matter of substance required by law, rendering such process void;

"(4) When the order or process, though in proper form, has been issued in a case not allowed by law;

"(5) When the person having the custody of the prisoner under such order or process is not the person empowered by law to detain him; or,

"(6) When the order or process is not authorized by any judgment or decree of any court, nor by any provision of law."

The section has been cited in habeas corpus decisions dealing with imprisonment in both civil and criminal cases. It appears clear that the provisions of OCLA, § 11-417 were not intended to nullify the express provisions of OCLA, § 11-422 which authorize the plaintiff to controvert any of the material facts set forth in the return or of OCLA, § 11-416, supra.

In *Ex parte Jack Wessens,* 89 Or 587, 175 P 73, this court employed language of OCLA, § 11-417 when it said, " 'The court will not, in ordering a writ of habeas corpus, *inquire into the legality or justice* of the mandate under which the petitioner is held' ", but

it added, " 'if it is not defective in matter of substance' ". (Italics ours.) The court continued:

"Taking the whole return as true, as we must on the demurrer, it appears that the sheriff holds the petitioner by virtue of a commitment issued by a magistrate and substantially conforming to the Code, as against the objection urged. The demurrer is therefore overruled."

In *Archerd v. Burk,* 148 Or 444, 36 P2d 338, this court said:

"In so far as it is applicable to the case at bar, the doctrine of the case In re Boalt, 123 Or. 1 (260 P. 1004), is that in a habeas corpus proceeding, a court may inquire into the legal status of the court or tribunal issuing the process by which the petitioner is held in custody for the reason that such an inquiry involves a question of jurisdiction."

In *Ex parte Cuddy,* 131 US 280, 33 L ed 154, the United States Supreme Court said:

" * * * We do not mean to say that this presumption as to jurisdictional facts, about which the record is silent, may not be overcome by evidence. On the contrary, if the appellant had alleged such facts as indicated that the misbehavior with which he was charged was not such as, under section 725 of the Revised Statutes, made him liable to fine or imprisonment, at the discretion of the court, he would have been entitled to the writ, and, upon proving such facts, to have been discharged. Such evidence would not have contradicted the record. But he made no such allegation in his application, and so far as the record shows, no such proof. * * *"

In *Ex parte Howe,* 26 Or 181, 186, 37 P 536, this court said:

" * * * This return was, by virtue of section 628 of the statute, open to denial, or its jurisdiction [?] to the sheriff might be controverted by the

allegation of any fact showing either that the imprisonment was unlawful, or that the petitioner was entitled to be released. * * *"

In *Ex parte Stacey*, 45 Or 85, 88, 75 P 1060, this court said:

"* * * The bill of exceptions does not disclose that Stacey interposed a plea of not guilty to the information, but, as the return to a writ of habeas corpus is traversable in this State (B. & C. Comp. § 640), if such plea was not entered it was his duty to show that fact, and, not having done so, it will be presumed that the court had jurisdiction of his person."

*In re Application of Loundagin*, 129 Or 652, 654, 278 P 950, the court said:

"* * * If the process is valid on its face, it will be deemed prima facie efficient, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. * * *"

■ At common law it was generally held that the return to the writ was conclusive to the facts therein stated. 39 CJS, Habeas Corpus, § 98, p 664. After setting forth the ancient rule, the same text continues:

"* * * However, it is now almost universally held, generally under express statutory provisions, that the return of itself is not conclusive of the facts alleged therein, and, as appears infra § 99, that the petitioner may deny the averments of the return or set up new matter in confession and avoidance thereof. * * *"

Again it is said:

"* * * It is apparent, however, that when courts say, as they sometimes do, that the scope of the remedy of habeas corpus involves nothing more than questions of jurisdiction, they are using the term 'jurisdiction' in a broad and inclusive sense. The principle that habeas corpus is not a

remedy for the review of mere errors or irregularities in the proceedings of a court is not to be so applied as to destroy constitutional safeguards of life and liberty. As hereinafter observed, jurisdiction of the person and of the subject matter is not alone conclusive where relief is sought in habeas corpus proceedings, but the power of the court to render the order or judgment that serves as the basis of the imprisonment of the petitioner is a proper subject of inquiry. Keeping in mind the limitation that in habeas corpus, the concern is not merely whether an error has been committed in ordering or holding the petitioner in custody, but whether such error is sufficient to render the order or process void, it may be said that the scope of a writ of habeas corpus, where directed to an inquiry into the cause of imprisonment in judicial proceedings, extends to questions affecting the jurisdiction of the court which committed the prisoner, the sufficiency in point of law of the proceedings against him, and the validity of the judgment under which he is restrained. * * *'' 25 Am Jur, Habeas Corpus, § 13, p 152.

'' * * * The later cases, however, take a different view—namely, that jurisdiction of the person and of the subject matter is not alone conclusive, but that the jurisdiction of the court to make or render the order or judgment that serves as the basis of the imprisonment is a proper subject of inquiry. According to this view, if jurisdiction is lacking in respect of any one of these essentials, the judgment is fatally defective and open to collateral attack.'' 25 Am Jur, Habeas Corpus, § 27, p 161.

In *Frank v. Mangum*, 237 US 309, 59 L ed 969, the United States Supreme Court said:

"There being no doubt of the authority of the Congress to thus liberalize the common-law procedure on habeas corpus in order to safeguard the liberty of all persons within the jurisdiction of the

United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. Re Cuddy, 131 U.S. 280, 283, 286, 33 L.ed. 154, 155, 157, 9 Sup. Ct. Rep. 703; Re Mayfield, 141 U.S. 107, 116, 35 L.ed. 635, 638, 11 Sup. Ct. Rep. 939; Whitten v. Tomlinson, 160 U.S. 231, 242, 40 L.ed. 406, 412, 16 Sup. Ct. Rep. 297; Re Watts, 190 U.S. 1, 35, 47 L.ed. 933, 944, 23 Sup. Ct. Rep. 718, 14 Am. Crim. Rep. 48.''

In *Von Moltke v. Gillies,* 332 US 708, 92 L ed 309, the record before the Supreme Court and before the Federal Court of Appeals, 161 F2d 113, shows that the actual text of the defendant's waiver of the right to counsel was before the court. The waiver states that the defendant was advised of her right to be represented by counsel, that she was asked whether she desired counsel and that she voluntarily in open court relinquished her right to counsel, yet the Supreme Court of the United States considered the evidence which was offered to show that her plea of guilty was entered by reason of deception and that she had never understandingly waived the right to counsel, and on the basis of evidence, the case was remanded to the district court to consider the facts further.

Speaking of the charges in the plaintiff's complaint, the Supreme Court said:

"* * * these charges entitled the petitioner to have the issues heard and determined in a habeas

corpus proceeding, and, if true, invalidate the plea and sentence. * * * "

Four of the judges thought the prisoner should be released. Two were of the opinion that the case should be remanded for further testimony. Three dissented. From that dissent we quote:

"In now attacking collaterally the unappealed and deliberate judicial proceedings of 1944, a heavy burden of proof rests upon the petitioner to establish the invalidity of her original plea and waiver. The essential presumption of regularity which attaches to judicial proceedings is not lightly to be rebutted. Johnson v. Zerbst, 304 US 458, 468, 469, 82 L ed 1461, 1468, 1469, 58 S Ct 1019, 146 ALR 357; Hawk v. Olson, 326 US 271, 279, 90 L ed 61, 66 S Ct 116. * * * "

Thus it appears that the justices agreed upon at least one proposition, i.e., that there was a constitutional right asserted as to which evidence should be received, notwithstanding the record.

The case of *Palmer v. Ashe,* 342 US 134, 96 L ed 130, was decided in December 1951. The plaintiff sought habeas corpus in the state courts and unsuccessfully exhausted his remedies in that jurisdiction. The United States Supreme Court granted certiorari. The plaintiff alleged that his pleas of guilty were entered without benefit of counsel and he set up other "special circumstances" concerning which the Supreme Court said: "All of the foregoing allegations, if proven, would present compelling reasons why petitioner desperately needed legal counsel and services. * * * " The court held that the states are required by the Fourteenth Amendment to afford to defendants the assistance of counsel in noncapital criminal cases "when there are special circumstances showing that

without a lawyer a defendant could not have an adequate and fair defense.'' The return to the writ admitted that the plaintiff had not been represented by counsel at his trial on the criminal charge but reliance was placed upon the trial record as a sufficient refutation of the plaintiff's allegations. ''In light of the record'' the state court had dismissed the petition ''thereby depriving petitioner of any opportunity to offer evidence''. The Supreme Court said:

> ''It is strongly urged here, however, that petitioner's allegations are satisfactorily refuted by the trial record, and that the Court should not now look behind that record, particularly in view of the long time that has elapsed since petitioner pleaded guilty. Of course the trial record may relevantly be considered in the habeas corpus proceeding. In some respects petitioner's allegations are refuted by the record. But that record does not even inferentially deny petitioner's charges that the officers deceived him, nor does the record show an understanding plea of guilty from this petitioner, unless by a resort to speculation and surmise. The right to counsel is too valuable in our system to dilute it by such untrustworthy reasoning. Cf. Hawk v. Olson, 326 US 271, 278, 90 L ed 61, 66, 66 S Ct 116. The judgment dismissing the petition is reversed and the cause is remanded to the State Supreme Court for further action not inconsistent with this opinion.''

There was a dissent by four judges but it is significant to note that no contention was made that the judicial record was invulnerable to attack in this manner. On the contrary, the dissenting judges considered the voluminous record of plaintiff's criminal activities as shown in the returns filed by the warden and the district attorney, including the fact that the plaintiff had first made known his error more than eighteen

years after he discovered it and they concluded that the decision of the Pennsylvania courts was "an allowable judgment" and that it was "permissible" for the courts of Pennsylvania to conclude that there was no probable cause shown for the issuance of the writ. The majority and minority opinions are both consistent with the rule that the judicial record may be impeached by evidence tending to indicate that the judgment was void.

In *Johnson v. Zerbst,* 304 US 458, 82 L ed 1461, the Supreme Court said:

"* * * In such a proceeding, 'it would be clearly erroneous to confine the inquiry to the proceedings and judgment of the trial court' and the petitioned court has 'power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject matter or to the person, even if such inquiry [involves] an examination of facts outside of, *but not inconsistent with, the record.'* * * *

"'* * * under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to a judgment against him. * * *'" (Italics ours.)

See also *Cochran v. Kansas,* 316 US 255, 86 L ed 1453, and *United States v. Adams,* 320 US 220, 88 L ed 4.

■ As to the first method of procedure as outlined above, we deem it firmly established by modern decisions, both state and federal, that the recitals in the judgment of conviction and sentence, although presumed to be both true and valid, may nevertheless

be attacked by evidence outside the record which tends to invalidate but not directly to contradict the judicial recital. The decisions from this and other jurisdictions which we have already cited support this view. And see *Ex parte Cuddy,* supra, 131 US 280, 33 L ed 154.

## DIRECT ATTACK ON THE RECORD

It will be observed that in addition to his allegations tending to invalidate his waiver of indictment as it appears in the judicial record, the plaintiff also directly alleges the falsity of certain recitals in the judgment concerning events which transpired in open court. Among other matters he denies the solemn recital that after arraignment defendant "answered 'Guilty as Charged in Said Information.' " This assertion of a right to introduce evidence for the purpose of directly contradicting a recital of fact in the judicial record for the purpose of showing a deprivation of constitutional right raises a different question. In *Riddle v. Dyche,* 262 US 333, 67 L ed 1009, the record of conviction showed that "a jury of good and lawful men" was duly impaneled, sworn and charged for the trial of the defendant who was convicted in the federal court. He then sought various remedies in an effort to prove that he was tried by a jury of eleven men only. Being unsuccessful he sued out a writ of habeas corpus which was denied and an appeal was taken to the United States Supreme Court. In an opinion by Justice Sutherland the traditional view concerning the right to contradict a judicial record was followed. The court first held that plaintiff's remedy was by writ of error which he had not followed and then said:

"* * * The writ of habeas corpus is not a

proceeding in the original criminal prosecution, but an independent civil suit (Ex parte Tom Tong, 108 U.S. 556, 559, 27 L. ed. 826, 827, 2 Sup. Ct. Rep. 871), in which the record of the trial court is not open to collateral attack, but imports absolute verity. * * *''

Cases were cited in support.

In *Wall v. Hudspeth,* 108 F2d 865, CCA Tenth, the contention in habeas corpus was that the plaintiff had not pleaded guilty to the charge contained in the indictment. The court cited *Riddle v. Dyche,* supra, 262 US 333, 67 L ed 1009, and said:

"* * * Furthermore, the record affirmatively discloses that the plea of guilty was to the charges contained in the indictment. The record is conclusive and not open to collateral impeachment in a proceeding of this kind."

Again in *Ossenfort v. Pulaski,* 171 F2d 246, CCA Fifth, the plaintiff in habeas corpus alleged that he had been deprived of his constitutional right to the assistance of counsel. The court said:

"* * * Moreover, where, as here, the record of a criminal trial clearly supports a recitation in the judgment that defendant was adequately advised of his constitutional right to counsel, and nevertheless chose to waive such right, that judgment may not be impeached collaterally on habeas corpus by subsequent findings to the contrary, wholly inconsistent with the record." Citing cases.

In *United States v. Handy,* 97 F Supp 930, the claim was that the trial in the state court had been dominated by mob influence. The case was brought to the federal court on habeas corpus. It was held that the sole inquiry which the federal court was permitted to make was "whether the federal Constitution was contravened." The court examined the evidence and held

against the plaintiff. The transcript of the criminal trial was before the federal court. The court said:

> "Following the precepts of Johnson v. Zerbst, supra, 304 U.S. at page 465, 58 S.Ct. 1019; United States ex rel. Kennedy v. Burke, 3 Cir., 173 F.2d 544, we examined the facts looking through form and into the heart and substance of the petition, the record in the trial and appellate courts, including the transcript of the testimony of the trial proceeding. We accept as true all of the well pleaded allegations of the petition, however much they may tax credulity, except to the extent that they conflict with the record and the trial transcript itself. *    *    *
>
> " '*Facts of record with regard to what occurred at a trial* cannot be attacked on habeas corpus.' " (Italics ours.)

In *Gutterman v. Hiatt*, 65 F Supp 285, the plaintiff in habeas corpus contended that his plea of guilty was induced by duress and upon that issue the court heard testimony. However, the plaintiff also attempted to contradict the recital in the judicial record. He claimed that he had not been advised of his right to counsel. The court said:

> "The petitioner's allegation that he was not advised of his right to counsel in the District Court for the Western District of North Carolina is answered by the minutes of the proceedings in the trial court in connection with the imposition of sentence, which specifically set forth: 'May 11, 1943. The case is called and the defts. Maurice A. Gutterman and Marion Rappaport Gutterman are present without counsel and before entering a plea, are asked by the Court if they desire counsel and they state to the Court that they do not, whereupon they each enter plea of guilty.' Such record entries import verity and are not subject to impeachment in a habeas corpus proceeding. *    *    *;"

In *Braun v. United States,* 16 F2d 118, CCA Ninth, the plaintiff in his petition for habeas corpus denied that he had entered a plea of guilty to the fourth count in the information against him. The court, by Judge Rudkin, said:

"* * * A record of conviction cannot be impeached in that way. If, as a matter of fact, the record on the criminal trial did not speak the truth, *it was the duty of the appellant to apply to that court for its correction,* and to prosecute a writ of error to this court, if his application was denied. Having failed to do this, he is now precluded from impeaching the record in a collateral proceeding, such as this. * * *" (Italics ours.)

In support of his opinion the court cited *Riddle v. Dyche,* supra. See also *United States ex rel Grove v. Jackson,* 16 F Supp 126; *Smith v. Hiatt,* 54 F Supp 481; *Williams v. Huff,* 146 F2d 867; *Bardwell v. Hiatt,* 50 F Supp 913; *Hill v. United States ex rel Wampler,* 298 US 460.

■ We hold, as a general rule, that recitals in the judicial record, showing what was said and done in the court, import absolute verity, and therefore cannot be collaterally attacked in habeas corpus. As indicated in *Braun v. United States,* supra, if the judicial record does not correctly state what occurred in court, the proper remedy is by motion to correct the record. *State v. Fiester,* 32 Or 254, 270, 50 P 561. We find support in the following cases: *Heatherly v. Hadley,* 4 Or 1; *Schmid v. City of Portland,* 83 Or 583, 163 P 1159; *Capos v. Clatsop County,* 144 Or 510, 25 P2d 903; *Travelers Insurance Co. v. Staiger,* 157 Or 143, 69 P2d 1069; *Linn County v. Rozelle et al,* 177 Or 245, 282, 162 P2d 150; *State v. Lillie,* supra, 172 Or 194, 139 P2d 576; *Cochran v. Amrine,* 153 Kan 777, 113

P2d 1048; *Lewis v. State,* 153 Miss 759, 121 So 493; *Commonwealth ex rel Chambers v. Claudy,* 171 Pa St 115, 90 A2d 383; *Spencer v. Gomez,* 114 Fla 688, 154 So 858; *Willoughby v. Utecht,* 223 Minn 572, 27 NW2d 779; *Ex parte Connor,* 16 Cal2d 701, 108 P2d 10; *Commonwealth v. Ashe,* 167 Pa Super 263, 74 A2d 769; *State ex rel Waldrop v. Mayo,* 125 Fla 442, 170 So 117; *Cohen v. Portland Lodge No. 142 B.P.O.E.,* 140 F 774; See 39 CJS, Habeas Corpus, § 100 e, p 681.

 It must be conceded that there are decisions which support plaintiff's assertion of a right, not only to go behind the judicial record by extrinsic evidence, but also to directly contradict recitals of fact therein concerning events which occurred in court. *In re Hazel,* 80 Okl CR 66, 157 P2d 225; *United States v. Thompson,* 175 F2d 140. It must also be conceded that there are cases, most of them old, which tend to support the position of the attorney general in the pending case, when he asserts broadly that the recitals in a judgment cannot be attacked in habeas corpus by impeachment or contradiction, that is, either by going behind the record or by direct contradiction thereof. See *Grieve v. Webb,* 22 Wash2d 902, 158 P2d 73, and *Ex parte Watkins,* 28 US 193, 7 L ed 650. We reject both contentions and the authorities supporting them. Again, the books are full of pronouncements in general terms that when violation of constitutional right is asserted in habeas corpus the federal courts will examine into the "very truth and substance of the causes of detention." And we find occasional statements such as this; "We believe that the question of representation by counsel may be raised in a habeas corpus proceeding, even if inquiry into that question entails contradiction of the record." *Curtis v. Hiatt,* 161 F2d 621. The question is, what is meant by such language.

We think the confusion in the judicial decisions upon this point comes from a lack of precise definition of the phrase, "contradiction of the record." Obviously no recital in a judicial record constitutes a bar to the reception of proof that the sentencing court never in the first instance acquired jurisdiction of the person or subject-matter of the cause. Attacks of this type upon judgments of sister states challenging their "jurisdiction" in the narrow sense of that term, are familiar to the profession. Again, it is sometimes intimated that the reception of proof of events occurring outside of court and offered to show fraud, duress or the like in inducing a waiver amounts to "contradiction of the record", and if the phrase be so defined, then we agree that the record may be so contradicted. *Curtis v. Hiatt,* supra, was such a case. Following the quoted portion of the opinion in that case, the court said, "This precise question was considered in *Williams v. Huff,* 142 F2d 91." The opinion in the Huff case is clear and concise. The court held first, "Facts of record with regard to what occurred at a trial cannot be attacked on habeas corpus." It held second, that the record did not show whether the waiver of constitutional right was competently and intelligently made and the cause was remanded with directions to the lower court to determine on testimony "whether, in the light of his age, education, and information, and all other pertinent facts, he has sustained the burden of proving that his waiver was not competent and intelligent." We recognize that the writ of habeas corpus should be left sufficiently elastic so that a court may, in the exercise of proper jurisdiction, deal effectively with any and all forms of illegal restraint. *Price v. Johnston,* 334 US 266, 92 L ed 1356. We agree that the constitutional rights of convicted felons must be

scrupulously observed, but there are other considerations which bear upon the limits which should be imposed upon inquiry of this sort. The integrity of the courts should not be subject to the attack of one who, presumptively at least, is a criminal. The vice inherent in a system which permits such an attack becomes intolerable when, as is constantly occurring, the attack upon the verity of judicial recitals of facts occurring in court is made after the lapse of years when the memory of officials is dimmed by a multitude of intervening events, and when only the convict makes assertions which impeach the integrity of the judge and the verity of the recitals made under his direction and which assertions too often tax credulity and suggest an origin post litem motam.

■ We accord respectful deference to the exercise of power by federal courts under the Fourteenth Amendment in revising the final judgments of state courts in habeas corpus proceedings. But we hold that the courts of the several states may rightfully claim for their judicial recitals the same immunity from direct contradiction which is asserted by the federal tribunals with regard to their records, hence our conclusion that recitals in a judicial record showing what was done in court import absolute verity and therefore cannot be collaterally attacked in habeas corpus.

■ The attempt of the plaintiff to establish that the recitals in the judicial record were false, fraudulent and malicious must fail. Our conclusion is not inconsistent with the provisions of OCLA, § 11-422 concerning the scope of the reply to the return. The right thus bestowed was not intended to extend to the direct contradiction of judicial recitals which import verity. The statute provides that a judgment

of imprisonment in the penitentiary "need only specify the duration of such confinement". OCLA, § 26-1214. The statute does not require that the judgment contain recitals concerning such matters as the waiver of grand jury or of jury trial and the like. See *In re Application of Loundagin,* supra, 129 Or 652, 278 P 950. Again, one may seek relief by habeas corpus from confinement which is pursuant only to a warrant issued by the county clerk and in the form prescribed in OCLA, § 26-1207, which recites only the fact of conviction and directs arrest of the defendant. The statutory authority to contradict any material fact set forth in the return refers to facts which must be included in the return. The authority to allege any fact to show that imprisonment is unlawful does not include the right to directly contradict judicial recitals which generally do appear in judgments of conviction and so also in returns to a writ of habeas corpus, but which are not required by statute so to appear. The federal statute on habeas corpus provides that the person detained may deny any of the facts set forth in the return or allege any other material facts. USCA, Tit 28, § 2243. Yet, the federal courts do not tolerate direct contradiction of judicial recitals of fact.

What has been said must not be taken as any indication that judgments of conviction should be limited in form to the bare requirements of the statute. We deem it the duty of a trial court to see to it that the journal entries fully and clearly set forth the proceedings, and it is desirable that similar recitals be made in the judgment itself. See *State v. McDaniel,* 70 Or 232, 140 P 993.

Although courts are reluctant to find that fundamental constitutional rights have been waived, it

is nevertheless the rule that such rights may be waived. *Schick v. United States,* 195 US 65, 49 L ed 99. But the waiver to be valid must not be the product of duress or misrepresentation. It must be voluntary and must be understandingly made with knowledge by the party of his rights. In this connection the age, education, experience, mental capacity, the nature of the charge, whether complicated or simple, the possible defenses available and other relevant circumstances will be considered if the case be taken to a federal court and should be considered in the state court if conflicts and intolerable delays are to be avoided. *Walker v. Johnston,* 312 US 275, 85 L ed 830; *Lee v. Mississippi,* 323 US 742, 92 L ed 330; *Hawk v. Olson,* 326 US 271, 90 L ed 61; *Johnson v. Zerbst,* supra, 304 US 458, 82 L ed 1461; *Uveges v. Pennsylvania,* 335 US 437, 93 L ed 127. In view of the allegations of plaintiff's reply and of his alleged illiteracy as testified to by him, the court erred in refusing to consider the validity of the waiver of indictment.

Plaintiff's second assignment of error reads as follows:

"The court erred in ruling that the question of whether or not the Appellant had made a plea of guilty could not be considered in this proceeding."

If this assignment of error were to be construed as a mere denial of the judicial recital that the defendant in open court answered "Guilty as Charged", we would hold it to be without merit. But the plaintiff explains his assignment by stating:

"In view of the fact that the question of whether or not the Appellant entered a plea of guilty rests on matters dehors the proceedings in the sentencing court * * *."

Thus construed the assignment merits consideration. The constitution of Oregon requires that in all criminal prosecutions the accused shall have the right to trial by an impartial jury. Constitution, Art I, § 11. The general rule concerning the requisites of a valid plea of guilty has been stated as follows:

"A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. Accordingly, it will not bind the defendant where it is entered through intimidation, however slight; and a judgment is not properly entered on it where the court does not satisfy itself of the voluntary character of the plea. It has sometimes been held that it must be made a matter of record that the plea was voluntary and uninfluenced by fear." 14 Am Jur, Criminal Law, § 270.

A plea of guilty is a judicial confession of guilt and comes within the established rule that the Constitution of the United States stands as a bar against the conviction of any person in an American court by means of a coerced confession. *Sustar v. County Court for Marion County,* 101 Or 657, 201 P 445; *State v. Lewis,* 113 Or 359, 230 P 543, 232 P 1013; *Ashcraft v. Tennessee,* 322 US 143, 88 L ed 1192; *Poole v. Commonwealth,* 301 Ky 531, 192 SW2d 490; *Jenness v. State,* 144 Me 40, 64 A2d 184; *Kercheval v. United States,* 274 US 220, 71 L ed 1009; *Johnson v. Zerbst,* supra, 304 US 458, 467, 82 L ed 1461, 1468, 58 S Ct 1019; *Townsend v. Burke,* 334 US 736, 92 L ed 1690. Other authorities cited under our discussion of the first assignment of error are relevant here. We conclude that plaintiff's reply presented issues of fact on which a hearing should have been held by the trial court relative to the validity of the plea of guilty.

The third assignment of error reads as follows:

"The court erred in ruling that the question of whether or not the Appellant had been denied the right to appeal until after the time limited by law for filing a notice of appeal had expired could not be considered in this proceeding."

The plaintiff's reply contains a direct allegation that after his sentence and for the ensuing 60 days (the period within which there is a statutory right of appeal) the defendant was confined in the penitentiary and was frustrated by official action in his efforts to appeal.

In *Cochran v. Kansas,* 316 US 255, 86 L ed 1453, the plaintiff brought habeas corpus in the Supreme Court of Kansas in which state the Great Writ is recognized as affording a remedy to a person held in prison in violation of constitutional right. The plaintiff alleged that the officials of the penitentiary in the enforcement of prison rules had rendered it impossible for him to perfect an appeal. This allegation, as in the case at bar, was not denied. The state court denied the writ. On certiorari the United States Supreme Court held that if the allegations of the petition were true there would be a clear case of a violation of the equal protection clause of the federal Constitution. Since the state court had not determined the verity of the allegations, the cause was remanded for further proceedings. The same rule was announced and applied in the recent case of *Dowd v. United States,* 340 US 206, 95 L ed 215. In that case the plaintiff who had been convicted in an Indiana court in the year 1931 alleged that his efforts to appeal were frustrated by the warden of the penitentiary pursuant to prison rules. After the rule had been repealed, but also after the time for appeal had expired, he sought

relief in the state courts, first by coram nobis in 1937 and then by habeas corpus in 1945. In 1946 he petitioned the Supreme Court of Indiana for a delayed appeal. All efforts were unsuccessful. Thereafter in the year 1948, being 17 years after his conviction, he brought habeas corpus in the United States District Court. It reached the Supreme Court in 1950 and in 1951 that court said, "The Fourteenth Amendment precludes Indiana from keeping respondent imprisoned if it persists in depriving him of the type of appeal generally afforded those convicted of crime." The case was remanded to the state court with the suggestion that "Indiana may find it possible to provide the appellate review to which respondent is entitled." Failing this he was to be discharged. These two cases establish the constitutional right of a prisoner to the type of appeal generally afforded. In both cases the prisoner had been convicted on a plea of not guilty and consequently the right of appeal included the right to a review of the record for the discovery of any errors committed at the trial whether or not they were violations of constitutional right.

In the case at bar the plaintiff pleaded guilty. If the plea was understandingly and voluntarily made it amounted to a conclusive admission of all material allegations of the information. *Sustar v. County Court for Marion County,* supra, 101 Or 657, 201 P 445. Under these circumstances the right of appeal would be of a strictly limited nature. He could invoke the provisions of chapter 62, Oregon Laws of 1945 (OCLA, § 26-1304a) on the alleged ground that the sentence imposed an "excessive, cruel or unsual punishment." Upon this ground we judicially know that he could not prevail. The penalty authorized by statute is imprisonment in the penitentiary for not less than one

nor more than 10 years. The sentence imposed was imprisonment not to exceed three years. At the habeas corpus hearing the plaintiff admitted two previous convictions for felony. Since the habitual criminal act was not invoked the duration of punishment was within the sound discretion of the trial court. The sentence imposed could not have been either excessive, cruel or unusual under these circumstances.

It may be argued that under the decision in *State v. Lewis,* supra, the scope of appeal on a valid plea of guilty is somewhat broader than that authorized by the 1945 statute. Assuming this to be the case, the scope of appeal under that decision would be limited to certain questions of law. We have the information before us and find it sufficient in form. The only other questions of law are those which raise constitutional questions based on evidence dehors the record. These are the questions presented in the habeas corpus proceeding now pending and they will be examined by the trial court on remand. If any error of substance occurs in the decision of those questions the right of appeal may be invoked.

The foregoing discussion has been upon the assumption that the plea of guilty was validly made. If upon remand it be ultimately found to have been involuntary or invalid for other reasons, then plaintiff will be entitled to discharge and will have no use for an appeal. It follows that under the peculiar facts of this case, the plaintiff is not entitled to raise the question concerning the alleged deprivation of his right to appeal from the original sentence of conviction. Such an appeal would avail him nothing and his rights are adequately protected in this case. It is therefore unnecessary for us to consider in this case whether

one who has been denied a substantial right of appeal until after the statutory time has expired, is entitled to a delayed appeal. See *Dowd v. United States,* supra, and *Cook v. State,* 97 NE2d 625, holding that where an appeal has been frustrated by official action the court has inherent authority to extend the time to entertain the appeal "for sufficient reasons shown."

Plaintiff's fourth assignment of error is as follows:

"The court erred in ruling that the Appellant had waived his right to the assistance of legal counsel and in dismissing the proceeding on that ground at the close of the Appellant's case."

The judicial record of the convicting court contains no recital of any waiver by the defendant therein of the right to counsel, nor does it recite that defendant was advised of his rights in that respect. But however desirable such recitals, if conformable to the facts, would have been, the statute does not require them. We are not prepared to say that the trial court erred in the habeas corpus case when it ruled against the plaintiff's contention that he never understandingly and voluntarily waived his right to counsel. The court heard all of plaintiff's testimony upon that issue. It was met by the presumption that official duty has been performed and it is generally held that one who attempts to go behind the record fair on its face to invalidate a conviction assumes a heavy burden. However, since the trial court on remand must consider all of the circumstances in determining whether plaintiff validly waived indictment and validly pleaded guilty and since one of the circumstances on each of those issues is the fact that plaintiff was without the aid of counsel, the trial court will be directed to reconsider the entire question concerning the alleged

denial of counsel. That issue must be decided in conformity with the constitutional mandate that "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." Oregon Constitution, Article I, § 11. While the right to counsel may be waived, the validity of the waiver, when challenged, is to be determined after a consideration of all of the relevant circumstances of the particular case, as indicated by the authorities already cited concerning the waiver of fundamental rights.

The plaintiff complains of the refusal of the trial court to permit a withdrawal of the recorded plea of guilty. This contention will be considered by the trial court in connection with its decision on the issues raised by the second assignment of error. If the original plea of guilty was voluntarily and understandingly made, then the allowance of the petition for leave to withdraw the plea and enter a plea of not guilty rested in the sound discretion of the trial court. *State v. Lewis,* supra, 113 Or 359, 230 P 543, 232 P 1013; *State v. Wiley,* 144 Or 251, 24 P2d 1030. If the original plea of guilty was not valid, the plaintiff should be discharged from custody.

█ The trial court heard only the testimony offered by the plaintiff upon the issue of the waiver of right to counsel. It is better practice in cases of this kind to hear both sides of the controversy. The impelling reason is that any procedure short of a full hearing leaves the case in such a posture that repeated subsequent applications for habeas corpus, raising identical questions, may be, and very often are, made in federal courts, where the case is again tried on its merits on the theory that a full hearing was not accorded in the state court.

In *House v. Mayo,* 324 US 42, 89 L ed 739, the Supreme Court said:

"Since the petition for habeas corpus was denied without requiring the respondent to answer and without a hearing, we must assume that the petitioner's allegations are true.  *  *  *"

A state court decision based on full hearing would receive in the federal court the weight to which it is entitled under the principles of comity. As said in *House v. Mayo,* supra:

"* * * where a state court has considered and adjudicated the merits of a petitioner's contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily re-examine upon writ of habeas corpus the questions thus adjudicated. See ex parte Hawk, supra (321 US 118, 88 L ed 575, 64 S Ct 448)."

This disposes of all of the assignments of error. What we have said must not be taken as an expression of opinion upon the merits of the claims of the plaintiff who has the burden of proof. The trial court may consider all of the relevant circumstances. In weighing the testimony of the plaintiff it may consider whether there has been any unreasonable delay in the assertion of the matters on which he now relies, not for the purpose of holding that delay is any waiver of constitutional right, but for the purpose of determining the credibility and good faith of the plaintiff.

We have considered this case at length because of the importance and novelty, at least in this jurisdiction, of the issues presented. The recent flood of litigation flowing from behind prison walls renders it imperative that procedure in state courts be not only

fair, but prompt and clearly defined if intolerable delay in the determination of fundamental rights is to be avoided. It must be small comfort for a convict, after long years of confinement in a penitentiary, to learn that the judgment of conviction was void. By the same token, any procedure which permits a convict to conduct protracted litigation in state and federal trial and appellate courts at enormous public expense, must raise grave questions as to the adequacy of the remedies provided in both judicial systems. The situation is complicated by the fact that judgments in habeas corpus are not generally considered res judicata on the issues determined. *Waley v. Johnston,* 316 US 101, 86 L ed 1302, 25 Am Jur, Habeas Corpus, § 156, p 250. The problem received consideration in *Wade v. Mayo,* 334 US 672, 92 L ed 1647, where it is pointed out that district court judges have used their power to upset the judgments of the highest state courts only sparingly and "only in a negligible number of instances have convictions sustained by state courts been reversed." While this is of course true, the fact remains that the federal courts have been flooded with cases of this kind. The same high court pointed out that:

"* * * during the fiscal years of 1943, 1944 and 1945 there was an average of 451 habeas corpus petitions filed each year in federal district courts by prisoners serving state court sentences; of these petitions, an average of but 6 per year resulted in a reversal of the conviction and a release of the prisoner. The releases thus constituted only 1.3% of the total petitions filed. * * *"

Thus it appears that while the results have largely vindicated the judgments of the state courts, the expense and delay incident to the procedure cannot be ignored.

■■ A primary responsibility rests upon the trial judges of the convicting courts. *Mooney v. Holohan,* 294 US 103, 79 L ed 791. Extreme care must be exercised in each case to see to it that the accused understands the nature of the charge against him, the consequences of possible conviction, the rights which are his under the Constitution, and the nature and the effect of the waiver of any such rights, particularly when he appears without counsel. This duty should normally be performed in open court and the judicial record should accurately recite what was done, supported wherever possible by an official stenographic transcript of the proceedings on arraignment and at the time of any waiver or plea. If these duties be faithfully performed, the defendants will be fully protected in their rights and the necessity for the employment of the "Great Writ" will be reduced to a minimum. That writ should not be employed under our practice when relief can equally well be afforded by appeal.

The cause is remanded to the trial court for further proceedings conformable to this opinion.

PETITION FOR REHEARING

*George Neuner,* Attorney General for Oregon, and *Howard R. Lonergan,* Assistant Attorney General, both of Salem, for the Petition.

*Hewitt, Estep & Sorensen,* of Salem, contra.

Before BRAND*, Chief Justice, and ROSSMAN, LUSK, LATOURETTE**, WARNER and TOOZE, Justices.

## BRAND, J.

---

* Chief Justice when former opinion was rendered.
** Chief Justice when this opinion was rendered.

We are confronted by a deplorable situation. On 21 September 1950 the petitioner Huffman was sentenced to serve a maximum term of three years. The petition for habeas corpus was not filed until 22 August 1951. The case was put at issue in the circuit court on 17 September 1951. It was not tried until 8 February 1952. The appeal was put at issue in this court on 7 July 1952, five months later. On 13 August this court advanced the case for hearing and heard it on 2 September 1952. For the first time, we are now informed by counsel that the plaintiff was discharged from custody 20 days after the case was argued here, and considerably before this court had completed its study of the varied and profoundly important issues presented. Working thus in the dark, we have expended time and effort in a case which became moot 20 days after we had heard the argument.

The office of habeas corpus is to give to a person, restrained of his liberty, an immediate hearing. OCLA, § 11-413; 39 CJS, Habeas Corpus, § 4, and cases cited. The employment of the Great Writ in this case has resulted in no relief to the prisoner and has uselessly clogged the docket of this court. An opinion upon the merits had been written and published, and a petition for rehearing filed and studied by this court before we were notified that the case had become moot.

The petition for rehearing is presented by the Attorney General. He "applauds" the views expressed by the court upon the merits, and seeks a rehearing only to a question of procedure. He agrees that habeas corpus is the proper remedy, if no other remedy exists, but now for the first time he suggests that a motion to vacate the judgment in the nature of coram nobis was the only proper procedure in this case. As an

alternative, he suggests that there was a remedy under the statutes, authorizing new trials in criminal cases. If the matter were now of any importance to the petitioner Huffman, we would hold that the procedural challenge to the employment of habeas corpus comes too late. We find no evidence that it was presented in the trial court, and it was not urged in this court until after the decision of the case. This case being now moot, the question for our consideration is whether we should pass upon the contentions of the Attorney General because of public interest, not in this case, but in the questions of procedural law which are presented. The discretionary right of this court to pass upon questions of public importance which have become moot is recognized by the authorities. *In re Suspension of License by Oregon Liquor Control Commission,* 180 Or 495, 177 P2d 406; 3 Am Jur, Appeal and Error, § 733, P 310. There may be further reason for considering the petition because of the fact, as certified by the Attorney General, that the petitioner Huffman, for reasons unknown to us, and in December of 1952, filed a motion in the nature of coram nobis in the Lincoln County circuit court, in which court he was convicted. Under all of the circumstances, we have decided to put at rest the issues presented by the Attorney General in order that the procedural questions may be removed from uncertainty. The petition presents matters which merit consideration and which may also suggest the desirability of remedial legislation.

Only once has the writ of error coram nobis been directly before this court. In *State v. Rathie,* 101 Or 368, 200 P 790, one who had been convicted of murder in the first degree attempted to sue out a writ of error coram nobis in the circuit court of Umatilla County,

in which court the defendant had been convicted. After hearing, the trial court dismissed the proceeding and an appeal was taken to this court, where the judgment of dismissal was affirmed. In a brief opinion the court said:

> "By Section 1603, Or. L. [now OCLA, § 26-1301], all writs of error and of certiorari are abolished in criminal cases."

The statute upon which the court expressly relied reads as follows:

> "Writs of errors and of certiorari in criminal actions are abolished, and hereafter the *only mode of reviewing a judgment or order in a criminal action is that prescribed by this chapter.*" OCLA, § 26-1301. (Italics ours.)

The next section of the statute reads as follows:

> "The party aggrieved, whether the state or the defendant, may appeal from a judgment in a criminal action in the cases prescribed in this chapter and not otherwise." OCLA, § 26-1302.

Speaking of OCLA, § 26-1301, the court said:

> "This section is plainly fatal to appellants' contention here, and the order of the Circuit Court is therefore affirmed."

■ The defendant argues that *State v. Rathie* does not deny the existence of a remedy in the nature of coram nobis in this state. He asserts that, although the application was denominated a petition for writ of error coram nobis, it was actually a petition for a retrial for newly discovered evidence. The record shows, however, that the petition was filed more than eight months after judgment of conviction and the right to file a motion for a new trial had long since expired. The proceeding was a petition for a writ of error coram nobis or it was nothing, and there is

nothing to indicate that the decision of the court would have been any different if, instead of denominating the petition as one for writ of error coram nobis, it had been denominated a motion in the nature of a writ of error coram nobis. The decision of this court in *State v. Rathie* was not based upon any insufficiency of the facts pleaded. On the contrary, the decision is a clear construction of statute, which declares that hereafter the only mode of reviewing a judgment or order in a criminal action is that prescribed by chapter 13 of Title 26 (OCLA, §§ 26-1301 to 26-1332 inclusive.) The chapter in question constitutes a code complete within itself, and the provisions of the civil code in reference to appeals do not apply to criminal actions. *State v. Berger,* 51 Or 166, 94 P 181; *State v. Stone,* 178 Or 268, 166 P2d 980, and cases there cited. The point of the case is that, by statute, the field has been preempted by a code which establishes exclusive procedure for the review of judgments and criminal cases.

From the case of *Boyd v. Smyth,* 200 Iowa 687, 205 NW 522, 43 ALR 1381, we quote the following:

"In a later Ohio case, State v. Hayslip, 90 Ohio St. 199, 107 N.E. 335, the court said:

" 'We find that in Ohio the common-law writs and pleas are designated and defined by statute just as crimes are designated and defined by statute. The writs of coram nobis and coram vobis, which are invoked in behalf of the defendants in error, are no part of the criminal jurisprudence of the state of Ohio.'

"Following this line of logic, it is to be noted by an inspection of our Code that it is a complete Criminal Code in itself, making provision for various pleas; also for motions for new trial, in arrest of judgment, and giving the defendant the right of appeal. Under our practice, when a crimi-

nal case is appealed, the duty of the Supreme Court is to review the errors, if any, in the record. In effect, under the Iowa practice the appeal in a criminal case has the same force and effect as does a writ of error in the courts where the same is used. It follows that, the Legislature having provided a complete Criminal Code, and not having provided for any writ of error coram nobis, such writ is not available under the practice in this state.

"In Coppock v. Reed, 189 Iowa 581, 178 N.W. 382, 10 A.L.R. 1407, an action in equity was brought to expunge and correct a record in a criminal case that had been tried several years before, in which Coppock was the defendant. In the discussion of that case this court said:

" 'Certainly, this may not be done through the writ of error coram nobis; for that does not lie, even if available in this state, to correct an issue of fact which has been adjudicated, nor for an alleged false testimony at the trial; * * * nor for newly discovered evidence'—citing authority.

"However, we are not disposed to dig into the musty archives of the past to resurrect and revivify ancient and worn out writs that have long since been discarded and forgotten."

The principle thus announced in the cases cited is as applicable to a motion in the nature of coram nobis as to the ancient writ itself. This was made clear by the Supreme Court of Iowa in *State v. Harper,* 220 Iowa 515, 258 NW 886. In that case an appeal was taken from the refusal of the court to entertain a motion for a new trial after the expiration of the term of court at which sentence had been pronounced. The motion was designated a " 'motion in arrest of judgment and for new trial and for writ of error coram nobis or other review.' " The court said:

"In so far as the motion may be treated as an application for writ of error coram nobis or other

review, it could not be entertained because this court has held that our code of criminal procedure is complete in itself and that common law proceedings not embraced in the code are not available, and has especially held that the writ of error coram nobis has been abolished. * * *''

In Michigan a similar rule was announced in *Dewey v. Otsego Circuit Judge,* 250 Mich 377, 230 NW 180. The question related to the duty of a court to grant a writ of error coram vobis. The court cited *Boyd v. Smyth,* supra, and said:

"The common-law writ of error coram vobis has never obtained in this State, having been rendered obsolete by statutory methods of correcting error. * * *

"To direct the circuit judge to make review 'in the nature of a writ of error coram vobis,' would award plaintiff review in the nature of a motion for a new trial long after right to make such a motion has been lost by delay."

A remedy by motion in the nature of coram nobis is available in the state of New York where it was held that the court has inherent power which the legislature can neither curtail nor abolish and which authorizes a court "to correct its own record or to set aside an order or judgment which was induced by fraud or procured in violation of a constitutional right of a party." *People v. Gersewitz,* 294 NY 163, 61 NE2d 427. However, the question decided in that case was whether an appeal would lie from an order denying the motion in the nature of coram nobis. It was held that there was no constitutional right to an appeal and since the legislature had provided none, no such right existed. The court said:

" 'It has repeatedly been held that the appellate jurisdiction of the courts of this state in crimi-

nal cases is purely statutory; and, of course, such jurisdiction can never be assumed, unless a statute can be found which expressly sanctions its exercise.' ''

■ The matter was said to be in the hands of the legislature. See *People ex rel Sedlak v. Foster,* 299 NY 291, 86 NE2d 752, 59 NYS2d 477. Subsequently a right of appeal in New York was provided by statute. See *Matter of Bojinoff v. People,* 299 NY 145, 85 NE2d 909; McKinney's Consol Laws of NY Ann, § 517, and 1947 amendment, 1952 Cumulative Pocket Part, § 517. See also *People v. Adamson,* 33 Cal2d 286, 201 P2d 537. If we had followed the New York theory on inherent power, it would have availed the petitioner in this case nothing, for Oregon has provided no right of appeal from any such order. We find no statute authorizing an appeal from an order on motion made after the time for such motion has expired and not appearing in a judgment roll. OCLA, § 26-1304. This absence of any right of appeal confirms our view that a motion in the nature of coram nobis, if it is available ever or at all, should not be declared to be the sole remedy for the vindication of constitutional right to the exclusion of the ancient writ of habeas corpus. The New York court in *People v. Gersewitz,* supra, recognized that ''Habeas Corpus proceedings are the traditional remedy'' in such cases.

■ Other considerations support our conclusion that habeas corpus was a proper remedy in the pending case. The only relief which can be granted under a petition for a writ of error coram nobis is the setting aside of judgment and the granting of a new trial. The modern substitute by motion is in the nature of an application for new trial. As we have said, the Oregon legislature has provided a complete criminal code

covering the right of appeal and the right to a new trial. The provisions of chapters 7 and 8 of Title 5 OCLA have been incorporated in the criminal code by reference. OCLA, § 26-1001. The incorporated portion of the civil code expressly limits the time within which a motion for a new trial may be made, as well as the time within which a new trial may be granted upon the court's own motion. OCLA, § 5-803 and OCLA, § 5-806. This court has held in a criminal case that a motion for a new trial must be filed within the time prescribed. *State v. Hecker,* 109 Or 520, 221 P 808. We would be reluctant to adopt as a general rule that one who has been convicted in violation of constitutional rights is without remedy merely because of his failure to act within 30 days. No such limitation has ever been imposed upon the employment of the writ of habeas corpus, yet, that identical result was reached in the leading case of *People v. Reid,* 195 Cal 249, 232 P 457, 460, when the relief sought was in the nature of coram nobis. The court said:

"Appellant concedes that the provision of a statutory remedy impliedly displaces the common-law remedy to the extent that the former is available, but argues that where the statutory remedy is unavailable by reason of the statute of limitations applicable thereto, that the common-law remedy should then be applied. He argues that because the defendant did not discover the facts here relied upon until too late to present them in support of his motion for new trial, the statutory remedy should be deemed 'unavailable,' and the common-law remedy should therefore be resorted to. He cites no authority which supports this conclusion and we are convinced that it is not sound. Where the Legislature has provided a statutory remedy which supplants in whole or in part a corresponding common-law remedy, and has appended

thereto a statute of limitations different from that which governs the common-law remedy, there is presented the situation of a conflict between the common law and the statute, in which case the latter must prevail. To hold in such case that after the expiration of the statutory limit the common-law remedy could still be availed of would be to hold in effect that in case of conflict between the two the common law prevails over the statute. * * *"

The ancient writ of error coram nobis was a common-law device designed to bring before a trial court a judgement previously rendered by it for the purpose of review or modification on account of some error of fact and not of law affecting the validity and regularity of the proceedings, and which was not brought into issue at the trial. 24 CJS, Criminal Law, § 1606, p 143.

"While the writ is recognized as an existing common-law remedy in some jurisdictions, it is almost obsolete, and in other jurisdictions has been abolished by statute or superseded by statutory remedies, at least as to so much of its former scope as is comprehended in and covered by the statutory remedies, and hence is not available under the practice in some states; but the same purpose is attained now in some of these jurisdictions by filing a motion to set aside the judgment, or a statutory petition in the nature of a writ of error coram nobis, although in appropriate circumstances the common-law writ may still properly issue. Statutes abolishing the common-law writ and authorizing correction of errors in fact, correctable by such writ, on motion or petition, do not abolish the essentials of the proceeding under such writ * * *." 24 CJS, Criminal Law, § 1606, p 144. And see 31 Am Jur, Judgments, § 798-812.

Iowa, Michigan and Oregon are listed in the notes to the text as states in which the remedy is not avail-

able. Where the procedure by motion is recognized, the scope of the remedy is determined by the decisions under the common-law writ.

When the writ coram nobis came into general use there was no remedy by appeal or motion for new trial. *People v. Reid,* supra. However, some of the states which have enacted complete criminal codes similar to OCLA, § 26-1301 et seq., have also continued to recognize the availability of common-law relief by motion in the nature of coram nobis, with confusion and uncertainty as the result. In other jurisdictions, post-conviction statutes have been passed which take the place of all proceedings in the nature of coram nobis and which eliminate much of the uncertainty as to the scope of that remedy. Illinois Revised Statutes, 1947 (State Bar Association Edition), ch 110, § 196, p 2539; Jones Illinois Statutes Annotated, 1934-1949, Cumulative Supplement, §§ 37.835-37.841, inclusive. Under the federal practice a post-conviction procedure in the nature of coram nobis is now authorized by statute. It is available when sentence has been imposed in violation of constitutional right, but applies only to convictions in federal courts. USCA, Title 28, § 2255.

The common-law writ, in its original form, was one of narrow scope, as compared to habeas corpus, and where statutory procedure by motion has been substituted for the writ, the scope of relief is still subject to many of the limitations which controlled the ancient writ. The common-law remedy was adopted in Nebraska by statute, insofar as that remedy was not inconsistent with constitution or statutory provisions. The writ was therefore held available in that jurisdiction. *Swanson v. State,* 148 Neb 155, 26 NW2d 595.

But, it was also held that the writ was not available where the code provides a remedy. *Carlsen v. State,* 129 Neb 84, 261 NW 339, and the narrow restrictions which existed at common law were still recognized under the modern procedure in Nebraska. In *Hawk v. State,* 151 Neb 717, 39 NW2d 561, the court said:

> "Where the facts alleged are known to the applicant before or during the progress of the trial, or could have been known by the exercise of reasonable diligence, the writ must be denied."

The same requirement of reasonable diligence as a prerequisite for relief in the nature of coram nobis is generally recognized in the modern procedure analogous to the old writ. *Alexander v. State,* 20 Wyo 241, 123 P 68; *Dobbs v. State,* 63 Kan 321, 65 P 658; *People v. James,* 99 Cal App2d 476, 222 P2d 117. The James case, supra, resembled the one at bar in many respects. The court cited many authorities to the effect that the remedy by motion is one of narrow scope, available only when no other remedy exists, and when the petitioner could not, in the exercise of due diligence, have discovered the alleged violation of his constitutional rights at any time substantially earlier than the time of his motion for the writ. The court held that the applicant was precluded from asserting the irregularity of procedures, by his failure to move to quash the information pursuant to the authority of statute. See 31 Am Jur, Judgments, § 806; *People v. Reid,* supra. In *People v. Ingles,* 97 Cal App2d 867, 218 P2d 987, the court observed that habeas corpus has been held available in situations where the defendant was not given the opportunity to have the advice of counsel, and did not waive such right.

Another limitation upon the scope of the remedy in the nature of coram nobis is found in the rule that

the writ or equivalent motion is never granted to relieve from circumstances arising subsequent to the judgment. *Collins v. State,* 66 Kan 201, 71 P 251; 31 Am Jur, Judgments, § 3804. This rule alone would render coram nobis unavailable in the pending case because one of the issues related to the alleged unconstitutional deprivation of the right to appeal from the judgment. Again, the authorities are in conflict as to whether there is any time limit upon the right to proceed in this manner against the judgment. *People v Richetti,* 302 NY 290, 97 NE2d 908; *People v. James,* supra; 24 CJS, Criminal Law, § 1606c (3), p 153. The authorities are also in disagreement as to whether coram nobis would lie after affirmance on appeal. *People v. Reid,* supra, and *Smith v. Buchanan,* 291 Ky 44, 163 SW 5 (contra.)

The coexistence of a complete code of appellate procedure, with the remedy in the nature of coram nobis, and with the constitutional remedy of habeas corpus, has produced uncertainty among the members of the bar, and extreme difficulty in the courts, in their attempt to determine when relief in the nature of coram nobis is available and when it is not. In any event, it is clear that the adoption of the codes has resulted in a drastic narrowing in the scope of relief by motion in the nature of coram nobis. There is much with which we agree in a recent opinion of the Supreme Court of Kansas. We quote:

> "We need not say here that under no circumstances is the writ longer available under our procedure. But we are not now aware of a situation where adequate remedies are not provided by our comprehensive codes of civil and criminal procedure—by motions for new trial, on any of the many grounds enumerated in the statutes (G.S.

1935, 60-3001; 62-1603); for arrest of judgment (G.S. 1935, 62-1605, 62-1606); by petition for rehearing on account of newly discovered grounds for new trial (G.S. 1935, 60-3005); by proceedings to vacate or modify judgments (G.S. 1935, 60-3007); for vacation of void judgments (G.S. 1935, 60-3009); for appellate review (G.S. 1935, 60-3302 et seq.; 62-1701 et seq.); and in addition the relief afforded in habeas corpus proceedings (G.S. 1935, 60-2201 et seq. * * *'' *State v. Miller,* 161 Kan 210, 166 P2d 680.

An apt illustration of the confusion which has arisen with reference to the proper procedure may be found in *People v. Rothrock,* 14 Cal2d 34, 92 P2d 634. In that case defendant had been convicted of several crimes. Being reasonably uncertain as to his remedy he filed motions for writ of coram nobis, writ of audita querela, writ of habeas corpus, writ of certiorari, recall of remittitur, revocation and annulment of judgment, and ''for further relief.'' We should avoid the anomalous situation which arises when, in the same jurisdiction, similar relief is given under coram nobis and under habeas corpus, yet where it is held that relief in the nature of coram nobis is available only when there is no other remedy and that relief in habeas corpus is also available only when there is no other remedy, a situation which exists in a neighboring state. We conclude that the suggested remedy in the nature of coram nobis would not have been adequate, and was not available to plaintiff, and in any event, that habeas corpus was the appropriate procedure. *State v. Turpin,* 255 Wis 358, 38 NW2d 495.

It is suggested that both before and after our decision in *State v. Rathie,* supra, 101 Or 368, 200 P 790, this court has recognized the propriety of a motion in the nature of coram nobis. Reliance is placed upon

*State v. Lillie,* 172 Or 194, 139 P2d 576; *State v. Donahue,* 75 Or 409, 144 P 755, 147 P 548; and *State v. Fiester,* 32 Or 254, 50 P 561. It should be unnecessary for this court to point out the distinction between the cases last cited and the case at bar. In all three of the cases cited the court entered an order nunc pro tunc to correct or amplify the record so as to make it show the truth as to what was actually done in open court. In *State v. Lillie,* supra, we held that the error which was corrected by the nunc pro tunc order was merely clerical or ministerial. We cited *State v. Lillie* with approval in our original opinion in the pending case, and said, ''if the judicial record does not correctly state what occurred in court, the proper remedy is by motion to correct the record.'' In the case at bar, the attempt was not merely to correct clerical error concerning events in open court, but was to invalidate the proceedings in court by evidence concerning events before and after the court proceedings were had. In none of the three cases did the court have before it a claim of violation of constitutional right supported by evidence of conduct outside of court and tending to invalidate but not to contradict the judicial record.

As against the remedy of coram nobis, we find a wealth of authority to the effect that habeas corpus is the appropriate remedy in cases of this nature. We quote from *People v. Adamson,* 34 Cal2d 320, 210 P2d 13, a recent en banc decision of the Supreme Court of California:

> ''With expansion of the function of habeas corpus in this state, an application for that writ has become the proper remedy to attack collaterally a judgment of conviction which has been obtained in violation of fundamental constitutional rights. Thus, the appropriate writ to secure relief from a

judgment of conviction obtained by the use of false testimony known by the prosecution to be false is not coram nobis but habeas corpus (in re Lindley, supra, page 725 of 29 Cal.2d, page 928 of 177 P.2d; see People v. Mooney (1918), 178 Cal. 525, 174 P. 325; Mooney v. Holohan (1934), 294 U.S. 103, 113, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; In re Mooney (1937), 10 Cal.2d 1, 73 P.2d 554), although coram nobis has been used for this purpose (see People v. Kirk (1946), 76 Cal.App.2d 496, 498, 173 P.2d 367). And habeas corpus, not a nonstatutory motion to vacate the judgment (in the nature of a petition for coram nobis), is the proper proceeding to raise the question of systematic, discriminatory exclusion of Negroes from the grand jury which indicted defendant, a Negro. (See People v. Montgomery (1942), 51 Cal.App.2d 444, 125 P.2d 108.) Habeas corpus can be used to advance the contention of denial of the right to counsel, at least where no other remedy is available. (See in re Egan (1944), 24 Cal.2d 323, 337, 149 P.2d 693, 701 ['It may be assumed that a petitioner would be entitled to release on habeas corpus if he could show that deprivation of counsel resulted in an unfair trial or in substance in no trial at all']; In re Jingles (1946), 27 Cal.2d 496, 498, 165 P.2d 12 [proceeds directly to consideration of the merits of the contention, without discussing whether the writ is a proper remedy]; In re Tedford (1948), 31 Cal.2d 693, 192 P.2d 3 [same]; In re McCoy (1948), 32 Cal.2d 73, 194 P.2d 531 [habeas corpus is available where petitioner has no other adequate remedy]; * * *.''

*Petitioner v. O'Leary,* 325 Mass 179, 89 NE2d 769; *Ex parte Dooley,* Tex Cr App (1952), 246 SW 2d 631; *Ex parte McCune,* Tex. Cr. App (1952), 246 SW2d 171; *Ex parte Peaker,* 82 Okl Cr 360, 170 P2d 264; *Ex parte Wallace,* 24 Cal2d 933, 152 P2d 1; *Ex parte Pennington,* 71 Okl Cr 263, 110 P2d 923; *Horner v.*

*Webb,* 19 Wash2d 51, 141 P2d 151; *In re Davis,* 78 Okl Cr 444, 150 P2d 367; *People v. Montgomery,* 51 Cal App2d 444, 125 P2d 108; *Ex parte Wilkerson,* 72 Okl Cr 301, 115 P2d 923; *Ex parte Stinnett,* 71 Okl Cr 184, 110 P2d 310; *Ex parte Massey,* Tex Cr App (1952), 249 SW2d 599.

In our original opinion we intimated that one who had been convicted in violation of his constitutional rights would be entitled to his discharge. The Attorney General construes our statement as meaning that further prosecution would be impossible, no matter how guilty a defendant had been. No such construction of our opinion is warranted. Habeas corpus functions only to discharge from illegal confinement. What rights the state may have after such discharge is a question which is not before us. But see OCLA, § 11-418; *Ex parte Wilkerson,* supra; and *In re Stevens,* 81 Okl Cr 65, 160 P2d 415.

It is also contended in the petition for rehearing that even if a motion in the nature of coram nobis is not available, the plaintiff had an adequate remedy under the statutory motion for new trial. We have already indicated that the right to move for a new trial within 30 days of conviction would not, in this case, constitute an adequate remedy.

The Attorney General suggests one consideration of serious import. We think, however, that it relates to a matter of legislative policy. He points out that the use of habeas corpus, under our present statute, OCLA, § 11-442, may impose heavy burdens upon the circuit court of Marion County, in which county the penitentiary is located. If the flood of petitions for habeas corpus, (90 per cent of which have been found

to be unwarranted or fraudulent), should engulf the courts of Oregon, as has happened elsewhere, there would be some merit to this point. It is also true that extreme inconvenience may arise in securing in Marion County, the attendance, when necessary, of the officials of the convicting court. If the problem becomes sufficiently serious, the remedy lies with the legislature, either to amend the venue statute, or to enact a post-conviction statute, clearly defining the respective areas of habeas corpus, and of the suggested new procedure. Much of the difficulty suggested by counsel may be removed by a statutory provision such as that found in the federal laws providing that:

> "On the hearing of an application for a writ of habeas corpus to inquire into the legality of the detention of a person pursuant to a judgment the certificate of the judge who presided at the trial resulting in the judgment, setting forth the facts occurring at the trial, shall be admissible in evidence. Copies of the certificate shall be filed with the court in which the application is pending and in the court in which the trial took place." 28 USCA, § 2245, p 319.

> "On application for a writ of habeas corpus, evidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits." 28 USCA, § 2246. See also Illinois Post-conviction Statute, cited supra.

Counsel argues that "Legislation can not help" the situation because, forsooth, the legislature "has forbidden the use of habeas corpus in these cases by plain words." We know of no impediment to a legislative enlargement to the scope of habeas corpus if that should be necessary. However, our original opinion

has, we hope, made it crystal clear that habeas corpus was an appropriate remedy in the pending case.

■ Unless, and until, remedial legislation becomes necessary and is enacted, we are firmly of the opinion that we should not put shackles on the one writ which stands as the great guarantee to all men of justice under law. As said in *Price v. Johnston,* 334 US 266, 92 L ed 1356, "The writ of habeas corpus should be left sufficiently elastic so that a court may in the exercise of its proper jurisdiction, deal effectively with any and all forms of illegal restraint." Again it is said, "It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." *Bowen v. Johnston,* 306 US 19, 83 L ed 455. We must also shape our procedural apparatus so as to comply with the mandate of the United States Supreme Court in *Young v. Ragen,* 337 US 235, 93 L ed 1333, where it is said:

> "We recognize the difficulties with which the Illinois Supreme Court is faced in adapting available state procedures to the requirement that prisoners be given some clearly defined method by which they may raise claims of denial of federal rights. Nevertheless, that requirement must be met. * * *"

We venture one concluding suggestion. Habeas corpus has become the prevailing means by which the federal courts have inquired into the constitutional validity of criminal proceedings in state courts. The federal judges have been plagued by constant and almost endless litigation involving claims and counter claims as to what is the proper procedure in the respective states. The federal courts must, under their rules, determine, in cases coming before them,

whether the petitioner for habeas corpus has exhausted his state remedy. The books are full of cases suggesting the existence of a judicial game of battledore and shuttlecock, wherein claimants, over long periods of years, are tossed from state to federal, and back to state, and again to federal courts, in the protracted attempt to determine by what procedure relief should be given, assuming that it is merited. That the situation could become intolerable is illustrated by a study of the cases which originated in Illinois and have gone thence to federal courts. See also *United States v. Snyder*, 183 F2d 742.

These considerations suggest that, at least, in the absence of any legislation, this state should assimilate its procedure in these cases, as nearly as may be, to that of the federal courts, who, from time to time review our decisions, and that we should declare what is the proper state remedy. In *Darr v. Burford*, 339 US 200, 94 L ed 761, the United States Supreme Court said:

"The writ of habeas corpus commands general recognition as the essential remedy to safeguard a citizen against imprisonment by State or Nation in violation of his constitutional rights. * * *"

In harmony with this declaration, we hold that habeas corpus was the proper remedy in the case which was presented to us, and that there was no other adequate remedy. We hold further, that convicted persons should exhaust their remedies in the nature of an appeal and by motion for a new trial before resorting to habeas corpus, whenever on the facts of the case, either of those procedures would provide an adequate remedy.

The motion for rehearing is denied and the action is dismissed.

TOOZE, J., specially concurring.

I concur in the result reached in the majority opinion and think that the opinion is a splendid and valuable contribution to the law respecting the use of the writ of habeas corpus. I agree that in the instant case the proceeding by habeas corpus was proper and adequate to protect the constitutional rights of appellant.

However, as I interpret the opinion, the majority would deny the inherent power of a trial court to consider a motion in the nature of coram nobis for the correction of an erroneous judgment of conviction. With this I cannot agree. A motion in the nature of coram nobis is, to all intents and purposes, a delayed motion for a new trial. It is filed in the court where the conviction occurred, and after the time for filing a motion for a new trial and for appeal has expired under the criminal code. It is designed to protect the citizen in his rights, constitutional or otherwise, and to prevent oppression or persecution. It does not supersede the remedy by habeas corpus, nor does it conflict with it. In some respects it might be considered a concurrent remedy, and in others a superior one. It is a proceeding in the original court and criminal case and is addressed directly to the court that presumably has a better opportunity of securing firsthand knowledge of what occurred prior to and upon conviction than any other court; whereas, habeas corpus, if brought by a prisoner in the state penitentiary, must be filed in the circuit court for Marion county before a judge who may be a stranger to the record. In some cases it may be that habeas corpus would be the more effective remedy, but that is beside the point.

As authority for the proposition that a proceeding in the nature of coram nobis is not recognized in this

state, the majority invites attention to *State v. Rathie et al.*, 101 Or 368, 369, 200 P 790. I do not so interpret that opinion, but if it does so hold, I would expressly overrule it. In my opinion, the court there was referring to the writ of error coram nobis as a writ of review, and not to a motion in the nature of coram nobis such as we are discussing. It appears to me that that is what the court had in mind, because, after mentioning a writ of error coram nobis, it held that it had been abolished in this state by § 26-1301, OCLA, which provides:

> "Writs of errors and of certiorari in criminal actions are abolished, and hereafter the only mode of reviewing a judgment or order in a criminal action is that prescribed by this chapter."

If § 26-1301, OCLA, is to be held as denying the inherent power of the trial court to correct its own erroneous judgment of conviction, I would hold the statute unconstitutional to that extent.

It is my opinion that the true rule is to be found stated in *People v. Gersewitz*, 294 NY 163, 167, 61 NE2d 427. The New York court said:

> "The court has nonetheless recognized, at the same time, that courts have always asserted and exercised authority which, though perhaps not expressly established by statute, is 'based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution.' *'It is a power,'* the court said, *'which the legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional.'* (People v. Glen, 173 N. Y. 395, 400.) We have sanctioned the exercise of such a power by a court to correct its own record or to set aside an order or judgment

which was induced by fraud or procured in violation of a constitutional right of a party. Perhaps that power can have no broader scope. No case has been presented to the court in which the court was called upon to define its exact limits, but in March, 1943, this court authoritatively decided (three judges dissenting) that a court of criminal jurisdiction has 'inherent' power to set aside a judgment procured by fraud and misrepresentation and to permit a defendant to withdraw a plea of guilty induced by violation of his constitutional rights (Matter of Lyons v. Goldstein, 290 N. Y. 19); and in Matter of Morhous v. N. Y. Supreme Court (293 N. Y. 131), we held that a motion to vacate a judgment procured by violation of the defendant's constitutional rights is the corrective judicial process which is authorized by the law of the State to remedy the alleged wrong to the defendant and that it adequately meets the requirement of 'due process'. * * *

"* * * A motion which invokes the 'inherent' power of the court to remedy an alleged violation of a defendant's constitutional rights is analogous, in some respects, to proceedings initiated by the common law writ of *coram nobis* and to proceedings initiated by a petition for a writ of habeas corpus; but habeas corpus proceedings are special proceedings, classified by the Legislature as civil proceedings in the Civil Practice Act and an appeal from a final order in such a proceeding may be taken as provided in that act." (First italics ours.)

ROSSMAN, J., concurs in this opinion.